JAY L. MARDEN *vs*. MALLARD DECOY CLUB, INC.

Plymouth. October 6, 1971. — February 8, 1972.

Present: TAURO, C. J., CUTTER, REARDON, QUIRICO, & HENNESSEY, JJ.

*Way*, Private: extent. *Easement.*

Where an instrument creating a right of way in favor of several properties referred to a "causeway" and a "cartway" and gave the owners of the dominant properties "all necessary privileges of passing and repassing to improve their several" properties, the trial judge, in a proceeding for registration of the servient estate, improperly limited the use of the way to foot travel. [108]

PETITION filed in the Land Court on September 8, 1966.
The case was heard by *McPartlin*, J.
*Thomas P. Joyce* for the respondent.

HENNESSEY, J. The petitioner seeks to register title to certain land located on the east side of Cushing Highway in Scituate. He denies "the existence of any easements or rights of way in, on or over the premises described." The respondent (the Club) contends that it has a right of way over the petitioner's land and seeks to have the nature and extent of said way determined. A hearing was held in the Land Court on the petition for registration. The judge's decision, which included voluntary findings of fact, ruled that there was created by grant an easement appurtenant to the land owned by the Club and that the easement was restricted to foot travel. The case is before us on the respondent's exceptions to

that part of the judge's ruling which restricted the easement to foot travel.

The strip of land which is the subject of this controversy is located in Scituate and runs easterly from Cushing Highway across the petitioner's land and across a marshy area to an island known as Will's Island.[1] The judge found that Will's Island was a part of a large tract of land owned by one John Cushing prior to 1799. There was a division of the estate of Cushing in 1799. The instrument creating the division contains a reference to a "cartway going on to Wills' Island" and to "the causeway going on to Wills' Island." The instrument gives "to the owners of each of said Six shares all necessary privileges of passing and repassing to improve their several shares." The judge found that reference to this appurtenant easement is made in similar form in the subsequent instruments which make up the chain of title of the Club. He also found that in 1922 the way had a hard dirt surface, but, at the present time, is not so well defined on the ground.

The Club, which has been in existence since 1960, has approximately twenty-five members who use its land on Will's Island for recreational purposes. They get to the island by boat or by using the way. There was evidence that members of the Club prior to its establishment had used the way from 1927 to 1962; that they had walked over the way, and on occasion had used a vehicle to travel over the way. There was other evidence that in 1962 a predecessor in title to the petitioner caused the way to be blocked with large stones and brush and that in 1952 a chain had been placed across the way. This chain was removed one year later. Other witnesses testified that on several occasions prior to the establishment of the Club, vehicles had been used on the way, that tire tracks were visible on the way, and that there was a place at the end of the way where vehicles could turn around.

---

[1] The island has been sometimes referred to as Will's Island or Willis Island.

The only issue for us to decide is whether the judge was correct in limiting the use of the way to foot travel. It is settled that the court can determine the location, limits and purposes of the way over the petitioner's locus. *Old Colony St. Ry.* v. *Phillips*, 207 Mass. 174. That determination is to be made from an examination of the language of the grant construed in the light of attending circumstances. *Hewitt* v. *Perry*, 309 Mass. 100, 105. We have held that an easement granted in general terms is not necessarily limited to the uses made of the dominant estate at the time of the creation of the easement and it is available for all reasonable uses to which the dominant estate may thereafter be devoted. *Doody* v. *Spurr*, 315 Mass. 129, 133.

In the present case, the pertinent language creating the easement refers to a "causeway" and a "cartway" and gives to the owners of the dominant estate "all necessary privileges of passing and repassing to improve their several shares." In our view, the language employed here could have been no more general or unrestrictive in nature. It is unlike the restrictive language in *Clarkin* v. *Duggan*, 292 Mass. 263, 265, which referred to a right of way for "teams only" and was held not to include automobile traffic.

The language used in the present case is closely akin to that used in several other decisions. In *Crosier* v. *Shack*, 213 Mass. 253, 254, 256, we held that the words "the necessary use of a private right of way" used in connection with the granting of such a way permitted such use as is "reasonably necessary to the full enjoyment of the plaintiff's premises" including the use of an automobile. In *Hodgkins* v. *Bianchini*, 323 Mass. 169, 172, the language at issue in the grant was "Together with a privilege of a cart road to pass to and from the main street." There, we held that the use of the way was not limited to horse drawn vehicles but included use by motor vehicles. We said, quoting an earlier case, *Swenson* v. *Marino*, 306 Mass. 582, 587: "We should be very slow to hold that even ancient rights of way, not expressly restricted as to

the type of vehicle . . . could not be employed at all for the means of transportation in common use by a succeeding generation." 323 Mass. at 172–173. Finally, in *Copp* v. *Foster*, 345 Mass. 777, we held that there was no error in determining that a right of way should now be open to motor vehicles where the language involved was "to pass and repass at all times with teams."

In view of our earlier decisions, we believe that the general language employed in the present grant, namely, "necessary privileges of passing and repassing to improve their several shares," together with the references to a "causeway" and "cartway," permits use of the way by motor vehicles. Nothing in the circumstances of this case either at the time the way was created or at the present time indicates that the way was intended to be restricted to foot travel only (compare *Doody* v. *Spurr*, 315 Mass. 129), nor was there sufficient evidence of abandonment. *Jones* v. *Stevens*, 276 Mass. 318. *Desotell* v. *Szczygiel*, 338 Mass. 153. We note that the result we reach here is in accord with majority principles concerning the use of a way where the right was granted in general terms: "A right of way, general and without limitation in its terms, is generally held properly subjected to animal and vehicular use, the theory being that such use, being necessary to the reasonable and proper use and enjoyment of the dominant estate, was within the contemplation of the parties." Annotation, 3 A. L. R. 3d 1256, 1284 and cases collected.

In accordance with our opinion, the decree of registration should provide that the Club has a right of reasonable travel, including the use of motor vehicles, upon the right of way.

*Exceptions sustained.*