LAWRENCE A. PION *vs.* EDWARD S. DWIGHT & another.[1]

Franklin. December 5, 1980. — February 23, 1981.

Present: BROWN, CUTTER, & PERRETTA, JJ.

*Easement. Deed,* Construction. *Practice, Civil,* Judgment, Findings by judge.

In an action to establish a party's right to an easement reserved in a conveyance of land, the language creating the easement contained no ambiguity that would require resort to extrinsic evidence for its interpretation, and supported the judge's conclusion that the easement was for the benefit of all parcels retained by the grantor at the time of her deed [408-412]; however, since the judge had heard and observed witnesses concerning the circumstances at the time of the deed, and certain of his subsidiary findings went beyond the evidence most favorable to the party seeking the benefit of the easement, this court afforded the judge, on remand, an opportunity to review his findings and determine whether he would reach the same conclusion after disregarding the questioned subsidiary findings [412-413].

In an action to establish a party's right to an easement, there was no evidence of harm sufficient to warrant the award of even nominal damages. [413-414]

CIVIL ACTION commenced in the Franklin Division of the Probate and Family Court Department on August 10, 1978.

The case was heard by *Keedy,* J.

The case was submitted on briefs.

*Alan H. Blanker* for the defendants.

*Joseph P. Boyle* for the plaintiff.

CUTTER, J. In 1957, three adjoining parcels of land in Shelburne were owned by Dorothy Harris (hereafter Harris). These parcels (see accompanying very rough sketch map) were on the north side of Old Greenfield Road (sometimes called Old County Road). Two parcels, referred to,

---

[1] Christine L. Dwight, wife of Edward S. Dwight.

respectively, as the Dwight lot and the Pion lot, directly abutted on Old Greenfield Road. The Reynolds lot adjoined the northerly boundaries of the Dwight lot and the Pion lot. Harris acquired each of these three lots by separate conveyances but in 1955 they were all merged in one ownership.

Harris conveyed two parcels comprising the Dwight lot to one Hoskeer on July 31, 1957. In the deed, she reserved "a right of way 25 feet in width running northerly from the Old County Road to land of . . . Harris, formerly of Reynolds, located north of said tract . . . following the course of and including within its width the lane now extending north through the east portion" of the first parcel then conveyed by her. This east portion of the first parcel was a strip two hundred feet wide west of and adjoining the Pion lot throughout its whole length. After this conveyance Harris continued to own the Reynolds and Pion lots. In 1959, she gave a mortgage of the Reynolds and Pion lots to Franklin Savings Institution (Institution) which later foreclosed the mortgage. The Pion and the Reynolds lots were conveyed in 1962, by Institution to the present plaintiff, Lawrence A. Pion, and his wife, "together with such appurtenances and subject to such encumbrances as are set forth in the" deed of July 31, 1957, to Hoskeer. Lawrence Pion and his wife later were divorced and, in connection with the divorce, his wife conveyed her interest in the Pion lot to him, and he conveyed his interest in the Reynolds lot to her.

Hoskeer on June 2, 1962, conveyed the Dwight lot to Edward S. Dwight and his wife, the present defendants, "subject to reservation of a twenty-five . . . foot right of way over the easterly portion of" one of the two parcels comprising the Dwight lot.

The trial judge found that, on November 23, 1977, the Dwights "erected a wire gate across the [s]outherly end of the right of way as it leaves Old County Road." Since then Pion has been "prevented from using the right of way in connection with the 'Pion lot'."

Pion brought a complaint in the Probate and Family Court (alleging many of the facts stated above) seeking (a) removal of the gate obstructing the right of way, (b) a permanent injunction ordering the defendants to refrain from interfering with Pion's use of the right of way, and (c) damages. The defendants denied that Pion had, appurtenant to the Pion lot, the privilege of using the right of way.

The case was tried on a partial statement of agreed facts and oral testimony. The trial judge made findings and rulings and ordered judgment declaring that Pion "has the right to use the right of way in connection with" the Pion lot, ordering the removal of the wire gate at the southerly end of the right of way, enjoining interference with Pion's use of the right of way, and finding damages of $1,000. By motion of the defendants (supported by several affidavits) various changes in the findings and in the judgment were requested. After hearing, an additional finding was made that the gate at the southerly end of the right of way had been built to restrain the defendants' cows and could be opened by manipulating a catch or latch. The judgment was modified to permit further maintenance of the gate with "a latch or handbar that can easily be opened." The defendants appealed.

1. The trial judge made the following findings among others. (a) Harris, prior to 1957, operated a farm on all three lots. (b) Her farmhouse was on the southerly part of the Pion lot where Pion now lives. (c) Harris had used "an old woods road," presumably the "lane" mentioned in the reservation of the right of way, (1) for "driving cattle" onto the Reynolds lot and the northerly part of the Pion lot,[2] and (2) for "gathering wood and timber on both" the Reynolds lot and the northerly part of the Pion lot. (d) There was a wire fence along the easterly boundary of the Dwight lot to restrain the cattle. (e) There was an opening in this fence

---

[2] That there was testimony to this effect, the defendants substantially admit in their brief.

through which "one could pass and drive cattle from the old woods road onto" the northerly part of the Pion lot. (f) After the 1957 conveyance, Harris used the right of way in the same way she had used the old woods road prior to the reservation of the right of way, both in connection with the Reynolds lot and the Pion lot, until 1962. (g) Pion and his ex-wife did the same from 1962 to 1975, as did Pion after the divorce in 1975 until 1977, when the defendants erected the gate.

2. The partial statement of agreed facts contains nothing with respect to the use of the right of way either prior to or after Harris' 1957 deed to Hoskeer. It thus is necessary to examine the statement of evidence (Mass.R.A.P. 8[c]) to determine whether the judge's findings are supported by the evidence. From such an examination, we conclude that the sentences marked (c)(2) and (f) in the preceding paragraph (summarizing the judge's findings) go somewhat beyond the evidence recited in the statement of evidence. Any testimony concerning Harris's "gathering of wood and timber" on the Reynolds and Pion lots and about Harris's use of the right of way after her 1957 deed until 1962 is either inconsistent with, or less specific than, the judge's findings on these points.[3] In the view we take of the case this may be of no importance (see part 3 of this opinion, *infra*). The statement of evidence does contain one piece of Pion's testimony, not mentioned in the judge's findings, which seems to us significant, viz. that Pion "used the right of way as it constituted the only means for him to get to the woods on the northerly portion of the 'Pion Lot,' because of the contour of the northerly portion of the 'Pion Lot' in relation to the

---

[3] There apparently was no stenographic transcript of the evidence. The trial judge may have approved incautiously a somewhat imprecise, very generally phrased, statement of evidence, drafted by counsel for the Dwights, which may have been less complete and less in accord with his findings than would have been warranted by the testimony.

southerly portion of that lot; and specifically because of the rocky ridge separating the two portions of the lot."[4]

3. The reservation in Harris' 1957 deed to Hoskeer does not limit by any express language the reserved easement as being only for the benefit of the Reynolds lot. On the contrary, the reference to the Reynolds lot in the reservation seems to us merely descriptive and an effort to define the northern end of the easement already marked by a "woods road" or lane, which (because included in the easement) defines its general route. The references to the Reynolds lot and County Road we view as no more than a statement of the termini of the right of way and as not relating to its use or scope. See *Jones* v. *Stevens,* 276 Mass. 318, 322 (1931). The easement we interpret as reserved for the benefit of *all* the parcels owned by Harris at the time of her 1957 deed which were adjacent to any part of the right of way. Even the defendants admit that the right of way was intended for the benefit of the Reynolds lot, retained by Harris after the 1957 deed. No reason appears why the easement should not be treated as also for the benefit of the Pion lot also retained by Harris in 1957, particularly if (as suggested by the summary of Pion's testimony) there are physical difficulties (without use of the right of way) in reaching the northern portion of the Pion lot. An easement is to be interpreted as available for use by the whole of the dominant tenement existing at the time of its creation. See *Rice* v. *Vineyard Grove Co.,* 270 Mass. 81, 86 (1930).[5] Cautious drafting of the 1957

---

[4] The judge was justified in finding that there "was an opening in . . . [the] fence [along the easterly boundary of the Dwight lot] where one could pass and drive cattle from the old woods road onto the [n]ortherly portion of" the Pion lot. This seems to us apparent from reading together pars. 3, 5, 6, 9, 10, 13, and 14 of the statement of evidence summarizing Pion's testimony. The judge was not bound to believe the contrary testimony of the defendant or his son, or the posttrial affidavit in 1979, of the former Dorothy Harris (now Hoskeer, and related to the defendants by marriage to a relative of one of them) about her use of the premises twenty-two years earlier.

[5] Normally at least, the easement would not be appurtenant to a parcel added to the dominant tenement *after* the conveyance creating the ease-

deed, of course, would either have specified the parcels comprising the dominant tenement to which it was intended that the right of way should be appurtenant, or (if it had been intended to exclude the owner of the Pion lot from use of the easement) the deed should have stated clearly any parcels in the vicinity owned by Harris which were not to have the benefit of the easement. See *Butler* v. *Haley Greystone Corp.*, 352 Mass. 252, 257 (1967).

4. We perceive no such ambiguity in the reservation of the easement as requires resort to extrinsic evidence to determine that the owner of the Pion lot (owned by Harris in 1957 and adjacent to the land subject to the easement) is entitled to the benefit of the easement. Even if resort is had to extrinsic evidence (see Restatement of Property § 483 [1944]; 2 American Law of Property § 8.65 [Casner ed. 1952]; 3 Powell, Real Property par. 415 [1979]), such evidence supports the view we take of the 1957 reservation. The extrinsic evidence shows that the 1957 easement followed a then existing lane or wood road used by Harris prior to 1957, in connection with her farm operations on *all* the land then owned by her. It may be inferred from the language of her deed and the facts of past use, that she (or her scrivener) intended to preserve the opportunity to use the road advantageously for the benefit of *all* land retained by her.

The inference is not precluded by the circumstance that the statement of evidence probably does not support the judge's finding that Harris used the right of way in connection with the Pion lot *after* her 1957 deed of the Dwight lot to Hoskeer. In various cases, the scope of an easement, granted in general terms, has been "determined by the language of the grant construed in the light of the attending circumstances." See *Doody* v. *Spurr*, 315 Mass. 129, 133 (1943); *Labounty* v. *Vickers*, 352 Mass. 337, 344 (1967);

---

ment, without the consent of the owner of the servient tenement, here the Dwight lot. See *Randall* v. *Grant*, 210 Mass. 302, 304 (1911). See also *Murphy* v. *Mart Realty of Brockton, Inc.*, 348 Mass. 675, 678-679 (1965); *Butler* v. *Haley Greystone Corp.*, 352 Mass. 252, 257-258 (1967).

*Ward* v. *McGlory*, 358 Mass. 322, 324 (1970); *Marden* v. *Mallard Decoy Club, Inc.*, 361 Mass. 105, 106-107 (1972); *Barchenski* v. *Pion*, 9 Mass. App. Ct. 896 (1980). The "attending circumstances" may include relevant uses made of the servient tenement at the time of, or prior to, the instrument creating the easement. See *Hodgkins* v. *Bianchini*, 323 Mass. 169, 174 (1948); *Rahilly* v. *Addison*, 350 Mass. 660, 663 (1966). See also *Blais* v. *Clare*, 207 Mass. 67, 70 (1910). Subsequent use of the easement also may be relevant, at least if ambiguity exists. See, e.g., *Randall* v. *Grant*, 210 Mass. 302, 304 (1911); *Kesseler* v. *Bowditch*, 223 Mass. 265, 268-269 (1916). Subsequent use, however, at most is only one relevant factor and the presence or absence of evidence of such later use (where admissible) is not decisive. See Restatement of Property § 483, & Comment j, *supra*. At least where some ambiguity requires explanation (see *Panikowski* v. *Giroux*, 272 Mass. 580, 582 [1930]), there is no violation of the parol evidence rule in receiving extrinsic evidence. See 9 Wigmore, Evidence §§ 2462-2464 (3d ed. 1940). See also Leach & Liacos, Massachusetts Evidence 273-280 (4th ed. 1967); Park, Conveyancing § 242 (1968).

5. This case probably could be disposed of on the interpretation of the 1957 easement, based upon its language, stated in part 3 of this opinion. The trial judge, however, heard and observed witnesses concerning the circumstances existing in 1957, and the then past use of the woods road in connection with the three adjacent parcels. Because two of his subsidiary findings go somewhat beyond the evidence most favorable to Pion (at least as set out in the statement of evidence, note 3, *supra*), we feel that the trial judge should be afforded opportunity, upon remand, to review his findings. We assume that he would have reached the same conclusion (as he would have been fully justified in doing) if he had omitted entirely those subsidiary findings which we have questioned in part 1 of this opinion.[6] The assumption

---

[6] That is, those summarized as (c)(2) and (f) in the paragraph preceding part 1 of this opinion.

is supported in some degree by the fact that the trial judge heard and rejected substantially all the contentions, now made by the defendants, when considering the defendants' motion for amendment of the findings and for a new trial. If, however, our assumption is incorrect, the judge should grant a further hearing and engage in further appropriate proceedings in the course of which he should make detailed revised findings. To these he should apply the legal principles set forth in this opinion. If he remains of the opinion expressed in his findings, after omitting and disregarding entirely the questioned subsidiary findings, he shall file (as promptly as is feasible) a written statement to that effect, in which event an entry of affirmance by this court shall be made (a) of the denial of the motion for a new trial and (b) of the judgment (apart from its award of damages, see part 6 of this opinion, *infra*). This procedure may afford a practical method of bringing this controversy promptly to a close without further resort to this court. See *Western Mass. Elec. Co.* v. *Sambo's of Mass., Inc.*, 8 Mass. App. Ct. 815, 817 n.2 (1972).

6. One further matter must be considered. The Dwights contend that the trial judge should have amended his findings and the judgment to eliminate the award of $1,000 as damages to Pion. It may be that, by inadvertence, this was not done when the judge on August 17, 1979, amended the judgment to permit the continued maintenance of the gate at Old County Road, with a suitable latch. The statement of evidence was presented to the trial judge some time after the August 17 hearing, and was approved by him on February 28, 1980. It contains no evidence of damages caused to Pion by maintenance of a gate, which (in accordance with his amended finding) the defendants may now retain to keep their cattle within the Dwight lot. See *Blais* v. *Clare*, 207 Mass. 67, 69-70 (1910); *Stucchi* v. *Colonna*, 9 Mass. App. Ct. 851 (1980). See also *Ball* v. *Allen*, 216 Mass. 469, 472-473 (1914). On this somewhat confused record, we are of opinion that there has been shown no evidence of harm to Pion from impermissible action by the defendants

sufficient to warrant the award of even nominal damages. See Restatement (Second) of Torts § 907 (1979). If the trial judge adheres in all other respects to his conclusion with respect to the easement (see part 5 of this opinion), the judgment will be modified by striking the award of damages.

7. The case is remanded to the Probate and Family Court for any further appropriate proceedings consistent with this opinion.

*So ordered.*