JACQUELINE CARLIN *vs*. EDWIN C. COHEN & another.[1]

No. 07-P-538.

Suffolk. April 14, 2008. - November 5, 2008.

Present: GRAHAM, DREBEN, & WOLOHOJIAN, JJ.

*Easement. Real Property,* Easement. *Evidence,* Declaration of deceased person, Value. *Practice, Civil,* Motion to amend, Joinder of claims.

In a dispute concerning the location of a deeded easement held by the plaintiff over the lot owned by the defendant, a Land Court judge did not err in concluding, based on the language of the deed, documents contemporaneous with the deed, and evidence of a path on the ground, that a particular path constituted the location of the original easement, nor did the judge err in the weighing of certain evidence concerning subsequent use of another path, or in admitting certain testimony under the dead man's statute, G. L. c. 233, § 65. [108-109]

In a dispute concerning a deeded easement held by the plaintiff over the lot owned by the defendant, a Land Court judge did not err in declaring that the defendant could relocate the easement to an alternative path that did not lessen the utility of the easement, increase the burdens on the plaintiff in its use and enjoyment, or frustrate the purpose for which the easement was created (i.e., the right to travel, by foot only, over the defendant's property to a private beach) [109-110]; further, the judge did not err in declining to consider evidence of the alleged diminution in the value of the plaintiff's property arising from the reduced views on the path of the relocated easement, where access to a view was not a purpose for which the easement was granted [110-111], nor did the judge err in implicitly finding that the defendant's newly constructed home was a normal development of his property [111-112]; however, where the judge may have erred in finding that the easement as relocated did not require increased maintenance by the plaintiff, this court permitted further proceedings in the Land Court as necessary to consider the matter further [112-113].

A plaintiff landowner disputing the relocation of a deeded easement that she held over the defendant's land failed to demonstrate an adverse change in travel over her land to reach the relocated easement [113]; that the defendant built his house over the original easement without permission [114]; that the judge erred in denying the plaintiff's tardy motion to amend her complaint to add a futile claim [114]; or that another individual should have been added as a party to the action [114].

[1]Andrew Flake, Inc.

CIVIL ACTION commenced in the Land Court Department on November 1, 2001.

The case was heard by *Charles W. Trombly, Jr., J.*

*Justin Perrotta* for the plaintiff.

*Russell Beck (David L. Delaney & Andrew K. Goldstein* with him) for the defendants.

DREBEN, J. This case, a dispute between two neighbors on Martha's Vineyard, concerns the location of a deeded easement held by Carlin over lot 12, now owned by Cohen, to a private beach known as the "Beach Reserve." It also involves the question whether the easement may be relocated according to the principles of *M.P.M. Builders, LLC* v. *Dwyer*, 442 Mass. 87 (2004) (*M.P.M.*).

The following facts are undisputed. When Cohen bought lot 12, there was a modest, unheated summer cottage on the property. Although his lot contains approximately 3.1 acres, it has a fairly small "building envelope"[2] as a result of zoning and wetland limitations. Cohen demolished the cottage and began construction of a larger house. Soon thereafter Carlin, and other plaintiffs not party to this appeal, brought this action against Cohen to enjoin construction and also claiming that he trespassed on their land, i.e., their easement.[3] If the original easement is located on the "Westerly Path" as Carlin claims, Cohen's house blocks part of the path of her easement. Cohen counterclaimed seeking a declaration that he may relocate Carlin's easement if her easement is held to be on the Westerly Path and not on the "Southern Path," as he claimed.[4]

The action was bifurcated for trial by a judge of the Land

[2]The building envelope refers to the buildable area on a lot.

[3]Construction on Cohen's house stopped on November 1, 2001 pursuant to a preliminary injunction issued by a judge of the Land Court who was not the trial judge. It resumed on February 10, 2003 after the injunction was lifted by the judge who issued it and after Cohen acknowledged that any further construction would be at his risk. He undertook to obey any order requiring demolition of a portion of his house. The trial judge explicitly stated that he "did not take into consideration any hardship that may be caused to Cohen if he were ordered to tear down his house (or a portion thereof). The court's . . . decision is based *entirely* on whether any of the proposed alternate easements satisfy the *M.P.M.* criteria."

[4]The other plaintiffs not parties to this appeal claimed prescriptive easements. The judge noted that they agreed to accept the Southern Path in a settlement with Cohen.

Court, and after two lengthy trials, the judge issued two careful and comprehensive decisions. Phase I of the trial addressed the question of the location of the original easement. The judge found that Carlin had an easement along the Westerly Path, as she had claimed, and not along the Southern Path as Cohen had urged. In Phase II of the trial, the judge considered whether the easement could be relocated and, if so, where it should be placed. The judge determined that reasonable changes in the location of the easement could be made, and that a proposed location, shown on a plan as the Blue Path, one of several options offered by Cohen, met the requirements of *M.P.M.* Judgment entered declaring the rights of the parties accordingly. The parties filed cross appeals. Cohen challenges the judge's location of the original easement in Phase I of the trial, and Carlin challenges multiple aspects of the judge's findings in Phase II. We affirm the judgment, except for a possible modification as to maintenance set forth in part 3.c of this opinion.

1. *Location of easement.* The location of the original easement is not clearly defined. It is described in Carlin's deed as "[t]he right to travel on foot only from the subject premises over a ten (10) foot way to the Beach Reserve shown on the attached Plan." No plan was attached. While recognizing that there was considerable evidence of use of the Southern Path ten years after Carlin acquired title, the judge, based on the language of the deed, on documents contemporaneous with the deed (a 1979 plan and covenant), and evidence of a path on the ground, concluded that the grant was of the Westerly Path.

In challenging that finding, Cohen claims that the judge erred in not giving enough credence to the subsequent use of the Southern Path by Carlin and her tenants, in admitting certain testimony under the dead man's statute, G. L. c. 233, § 65, and in construing Carlin's deed. The arguments are without merit. "Subsequent use . . . at most is only one relevant factor and the presence or absence of evidence of such later use (where admissible) is not decisive. See Restatement of Property § 483, & Comment j [1944]." *Pion* v. *Dwight*, 11 Mass. App. Ct. 406, 412 (1981). What is important is "the language of the grant construed in the light of attending circumstances." *Marden* v. *Mallard Decoy Club, Inc.*, 361 Mass. 105, 107 (1972).

As to the hearsay statement of Doris Parker, Carlin's deceased grantor, we see no reason to exclude her statement.[5] See *Harrison* v. *Loyal Protective Life Ins. Co.*, 379 Mass. 212, 219 (1979) (legislative decision to create exception to hearsay rule for declarations of deceased persons is applicable in all civil cases). Assuming, without deciding, that the affidavit of Parker's deceased attorney was erroneously admitted by the judge,[6] such evidence was merely corroborative.[7] The deed itself is the most important evidence of intent, and its language fully supports the judge's decision. The Westerly Path leads directly to the Beach Reserve via the parking area; the Southern Path does not and reaches a different beach.[8] As the judge pointed out, "it is significant that this specific location [the Beach Reserve] is referred to in the Carlin deed, and that the easement does not simply provide for passage to 'the beach.' " The judge's finding as to the location of the easement is not clearly erroneous. Indeed, the language of the deed may require it as matter of law.[9]

2. *Relocation of Carlin's easement.* In *M.P.M.*, the Supreme Judicial Court adopted § 4.8(3) of the Restatement (Third) of Property (Servitudes) (2000), set forth in the margin.[10] The court concluded that permitting relocation of an easement subject to the stated limitations "strikes an appropriate balance between the interests of the respective estate owners by permitting the

[5]Carlin testified that Parker told her that Carlin "had permission to go over the High Tide property [now Cohen's property] and to the Beach Reserve parking lot to the beach, and that was going to be in my deed."

[6]We make no suggestion to that effect.

[7]The affidavit stated, inter alia, that Montgomery "drafted this language [granting the easement] at the express direction of Mrs. Parker, who stated [to him] her intent to provide direct and convenient foot access from the Carlin property to the Beach Reserve and I believe the parking area."

[8]One can walk from that beach to the Beach Reserve.

[9]Construction began on Cohen's house in September, 2001, and Carlin sought an injunction immediately thereafter. We therefor consider Cohen's claim of laches to be without merit.

[10]"Unless expressly denied by the terms of an easement, as defined in § 1.2, the owner of the servient estate is entitled to make reasonable changes in the location or dimensions of an easement, at the servient owner's expense, to permit normal use or development of the servient estate, but only if the changes do not (a) significantly lessen the utility of the easement, (b) increase the burdens on the owner of the easement in its use and enjoyment, or (c) frustrate the purpose for which the easement was created."

servient owner to develop his land without unreasonably interfering with the easement holder's rights." *M.P.M.*, 442 Mass. at 91. If, however, the owners of the dominant and servient estates do not agree concerning the relocation of an easement, "the servient estate owner should seek a declaration from the court that the proposed changes meet the criteria in § 4.8(3)." *Id.* at 93.

After an eight-day trial on the question of relocation (Phase II), during which the judge took views of the properties "to evaluate the practicability of several proposed alternate easements," and after considering other paths proposed by Cohen — Carlin proposed none — the judge found the "Blue Path"[11] to be a suitable replacement meeting the requirements of *M.P.M., supra* at 91. "First, . . . the Blue Path is shorter than Carlin's original easement. . . . [and] will actually be *less of a burden to maintain.*" The Blue Path protects the parties' privacy, is not subject to greater erosion than the original easement, and "is relatively flat and much of the ground is on a grassy, level surface." In sum, the judge found that the Blue Path does not lessen the utility of the easement, increase the burdens on Carlin in its use and enjoyment, or frustrate the purpose for which the easement was created, namely, the right to travel, on foot only, from Carlin's property over a ten-foot way to the Beach Reserve.

3. *Carlin's claims of error.* a. *Diminution in property value.* The judge would not allow Carlin's appraiser to testify to the loss of value to her property because her view was interfered with by the presence of Cohen's house. As the judge considered this factor irrelevant,[12] he permitted testimony only as to the impact of relocating the easement on the value of the original easement on the assumption that Cohen's house remained in place. He also rejected any consideration of a claim that Carlin's view from the Blue Path was not equal to the view from the original easement, as Carlin did not have a view easement.[13]

---

[11]Six of the paths proposed by Cohen were shown on an exhibit attached to the trial judge's Phase II decision, and each proposed path was designated with a different color. Cohen also offered Carlin an easement "anywhere else across his property so long as it [did] not prevent construction of his residence."

[12]In his general discussion, not directed to the question of value, the judge stated, "From Carlin's house, one can see the roof of Cohen's new residence. Both homes have spectacular views of the beach and the ocean."

[13]The judge pointed out, however, "that for the majority of the walk to the

In arguing that the judge erred in declining to consider the diminution in value resulting from the relocation of the easement, Carlin focuses on the Supreme Judicial Court's statement in *M.P.M.* that "[§ ] 4.8 (3) maximizes the over-all property utility by increasing the value of the servient estate without diminishing the value of the dominant estate." 442 Mass. at 90-91. This language, however, must be read in context of the discussion of easements in *M.P.M.* The court explained that

> "[a]n easement is created to serve a particular objective, not to grant the easement holder the power to veto other uses of the servient estate that do not interfere with that purpose.
>
> "The limitations embodied in § 4.8 (3) ensure a relocated easement will continue to serve the purpose for which it was created. So long as the easement continues to serve its intended purpose, reasonably altering the location of the easement does not destroy the value of it."

*Id.* at 92-93.

We consider the judge correct in determining that if the three requirements of the section are met, all of which speak to matters relating to the easement — its utility, its use and enjoyment, and its purpose, see note 10, *supra* — and not to the dominant estate as a whole, other effects, unrelated to the purpose of the easement, which may reduce the value of the dominant estate are not to be taken into account. We also agree with the judge that the reduced views, if any, on the path of the relocated easement compared with the views on the original easement are not relevant. Access to a view was not a purpose for which the easement was granted. See *Green* v. *Blum*, 13 A.D.3d 1037, 1038 (N.Y. 2004).[14]

b. *Relocation not necessary for normal use or development of Cohen's property.* Carlin contends that since there was already

---

beach, Carlin will enjoy as spectacular a view of the ocean using the Blue Path as she now does."

[14]At trial, Carlin argued that the value of the easement was its capacity to prevent Cohen from utilizing his property. She wisely does not pursue this argument on appeal, as the purpose of *M.P.M.* is to allow development of the servient estate without granting veto power to the easement holder. 442 Mass. at 92.

a house on the Cohen property, there was development, and Cohen should be limited to adding on to the old modest structure or to building a smaller house. In view of the evidence of the high value of the real estate and the size of the surrounding houses, including Carlin's, the judge was warranted in implicitly finding that Cohen's house was a normal development of his property. See *Lewis* v. *Young*, 92 N.Y.2d 443, 446-447 (1998).

c. *Blue Path more burdensome.* Carlin claims the condition of the Blue Path is such that maintenance of it will be more burdensome. In answer to Carlin's contention that she has not had to perform any maintenance on the easterly portion of her original easement, the judge stated in an early portion of his Phase II decision:

> "Whether or not Carlin did, in fact, maintain the original easement is immaterial. What is relevant is the fact that *the burden was on Carlin* to maintain the original easement. If this court approves the relocation of Carlin's easement, Carlin would *continue to bear the same burden* to maintain the replacement path. Any difference in the frequency of Carlin making repairs or routine maintenance on the new path, compared to the original path, has no bearing on Carlin's *burden* to do so. In other words, Carlin assumed a burden to maintain the path when she purchased the land in 1980, and has carried that burden until the present. She would continue to bear that same burden if her easement were relocated."

We think this is an incorrect statement of the *M.P.M.* principle that the relocation may not "increase the burdens on the owner of the easement in its use and enjoyment." *M.P.M.*, *supra* at 90, quoting from Restatement (Third) of Property (Servitudes) § 4.8(3). Although the judge concluded, in discussing the merits of the Blue Path at the end of his Phase II decision, that the Blue Path will be less of a burden to maintain, this conclusion may have been influenced in the same way as was the judge's earlier incorrect discussion of the law on this issue. See *Coleman Co.* v. *Southwest Field Irrigation Co.*, 584 P.2d 883, 884 (Utah 1978). Cf. *Roaring Fork Club. L.P.* v. *St. Jude's Co.*, 36 P.3d 1229, 1238 (Colo. 2001) (adverse change in maintenance right of dominant estate owner does not comport with § 4.8[3]).

Cohen claims that subsequent to the judge's finding that the easement may be relocated to the Blue Path, and in consequence of that decision, he has changed the landscaping of the Blue Path, and that now increased maintenance is not required. If Cohen's claim is correct, and Carlin is in accord, it may not be necessary for the judge to consider the matter further. Otherwise, if within thirty days of the rescript, either party wishes to file a motion in the Land Court to have the judge determine the question, the judge shall hold such hearings, if any, as the judge deems necessary, and if appropriate, he shall modify the judgment in such manner as to impose on Cohen the increased costs, if any, of maintenance or impose on him the duty of landscaping the Blue Path so that the costs of maintaining the Blue Path are not greater than the costs of maintaining the original easement (by Carlin or by others). Without limiting the authority of the judge, he may determine that no modification is necessary because the increased costs are de minimis.

d. *Adverse change in travel over the dominant estate to reach the relocated easement.* The difficulty with Carlin's argument that it is more difficult to reach the relocated easement is that at trial, she prevented Cohen's surveyor from testifying about the slope on her land on the basis that the conditions on her property are irrelevant. Moreover, although there was evidence that in order to access the Blue Path she must walk over a knoll, Carlin has not pointed to any evidence that the path of the original easement was more level. The judge noted that "[n]either during the trial, nor in her post-trial brief did Carlin mention her preference for using the Purple Path [another option proposed by Cohen] to access the Blue Path should the court relocate the easement."[15] He also found "that the entry point [to the Blue Path] is equally accessible from Carlin's home, as compared to the entry point of the original easement." The judge's findings with respect to the condition of the entry point to the Blue Path, premised on his views (he took three) of the properties of both Carlin and Cohen, as well as evidence adduced at the trial, "must stand unless clearly erroneous." *Planning Bd. of Sandwich* v. *Board of Appeals of Sandwich,* 15 Mass. App. Ct. 971, 972 (1983).

[15]Use of the Purple Path would permit Carlin to enter Cohen's property at roughly the same area that she entered when she used her original easement.

e. *Unclean hands.* Carlin claims that since Cohen improperly built his house over the easement without permission, he cannot rely on the equitable principles of *M.P.M.* The judge found this argument unpersuasive, and we agree. Cohen ceased construction after Carlin obtained a preliminary injunction and did not resume construction until the injunction was dissolved, see note 3, *supra*, and Carlin's attempt to reinstate the preliminary injunction was unsuccessful.

f. *Denial of Carlin's motion to amend.* Carlin sought to amend her pleadings to add a claim that relocation of the easement constituted a taking without compensation. She filed her motion to amend four days into Phase II of the trial. Not only was this a tardy attempt to amend, but the amendment would have been futile. There was here no State action. Carlin's reliance on *Shelley* v. *Kraemer*, 334 U.S. 1 (1948), to urge State action is without merit. Cf. *Commonwealth* v. *Hood*, 389 Mass. 581, 588-589 (1983) (*Shelley* v. *Kraemer, supra,* does not apply to judicial enforcement of a trespass statute at the behest of a private party).

g. *Joinder of Ryan Melcher.* In a related case in this court, *Melcher* v. *Melcher*, 72 Mass. App. Ct. 1119 (2008), issued pursuant to our rule 1:28, we held that Ryan Melcher does not have an interest in Carlin's property. That decision disposes of Carlin's argument to join Ryan Melcher as a party in this case.

4. *Conclusion.* We affirm the judgment of the Land Court except with the possible modification set forth in part 3.c of this opinion. If either party seeks further action in accordance with that part of this opinion, the judge shall take such action, if any, he deems appropriate to implement part 3.c of this opinion.

*So ordered.*