FAITH BOUDREAU & others[1] vs. MARTIN J. COLEMAN, JR.,
& others.[2]

No. 89-P-873.

Suffolk. October 17, 1990. - December 19, 1990.

Present: SMITH, FINE, & IRELAND, JJ.

*Easement. Real Property,* Easement. *Way,* Private. *Subdivision Control,*
Access ways. *Deed,* Construction.

In an action by owners of property abutting two private ways seeking to
deny the developers of a proposed subdivision the right to pass from the
subdivision over the private ways to a certain public way, it was held
that neither the relevant instruments nor the attendant circumstances
clearly indicated an intention on the part of the original grantors and
grantees, when common ownership of the locus and land along the pub-
lic way was first severed, to create an unlimited easement for the bene-
fit of the grantors; and that, based on the facts set forth in the record,
the defendants failed to sustain their burden of clearly showing the ex-
istence of an easement by implication. [628-633]

In an action by owners of property abutting two private ways seeking to
deny the developers of a proposed subdivision the right to pass from the
subdivision over the private ways to a certain public way, it was held
that the developers' right to use the private ways for access to the pub-
lic way on the basis of their ownership of so-called "reserve" lots abut-
ting one of the private ways did not include a right to pass from other
lots into which the remainder of the locus might be subdivided, where
there was nothing in the record to show that the original grantors of
lots abutting the private road intended to retain any substantial ease-
ments other than those appurtenant to the "reserve" lots, and where the
developers' subdivision plan, which would increase the use of the pri-
vate ways, would overburden the easement rights in the ways. [633-
634]

CIVIL ACTION commenced in the Land Court Department
on March 3, 1988.

---

[1] Owners of property abutting Chesterbrook or Stanley Roads in
Waltham.

[2] George A. Coleman and James F. Stanton.

The case was heard by *Robert V. Cauchon*, J.

*Brian M. Hurley* (*Mary B. Freeley* with him) for the defendants.

*John J. Willis, Jr.* (*John J. Willis, Sr.*, with him) for the plaintiffs.

FINE, J. The defendants own a 25.5 acre parcel (the locus) in Waltham. They would like to develop it in accordance with a subdivision plan showing forty-one house lots. According to the proposed plan, the only access from the proposed subdivision to Lexington Street, a public way, would· be over Chesterbrook Road and Stanley Road, private ways perpendicular to each other. The plaintiffs, owners of property abutting those ways, sought in the Land Court a declaration that the defendants have no easement, by express reservation or by implication, to pass from the proposed subdivision over Chesterbrook Road and Stanley Road to Lexington Street.

The parties entered into an extensive joint stipulation of facts, with 68 deeds, plans, and taking orders appended as exhibits. Several additional documents and chalks were considered at trial, and the judge took a view of the site. In his decision, the judge ruled that it was not the presumed intent of the original grantors and grantees, when common ownership of the locus and the land along Lexington Street was first severed, to reserve an easement such as the defendants now claim. He ruled, further, that the defendants' ownership of the locus, a portion of which consists of certain "reserve" lots abutting Chesterbrook Road, gave the defendants the right to use the ways to pass to and from the "reserve" lots but not the right to pass from the proposed subdivision over Chesterbrook and Stanley Roads to Lexington Street, because such use would overburden the plaintiffs'. easement in those ways.[3] We substantially affirm the Land Court judgment in favor of the plaintiffs.

---

[3]The judge also ruled, and the defendants on appeal do not contest, that the plaintiffs hold fee ownership to the center line of Chesterbrook Road and that the defendants' fee ownership in the ways is limited to that portion of Chesterbrook Road, to the center line, which abuts the "reserve"

We summarize the facts insofar as they are essential to an understanding of the issues on appeal.[4] The relevant history of the land at issue begins in 1891 when Robert Treat Paine acquired a parcel of undeveloped land consisting of approximately thirty-eight acres abutting the easterly side of Lexington Street in Waltham.[5] The land remained undeveloped until after Paine's death in 1910.

Paine's five children, as his heirs at law, drew up and recorded three subdivision plans relating to approximately one-fourth of the thirty-eight acre parcel. (See 1912 plan and composite sketch depicting the lots developed in accordance with the three plans and their relationship to the locus.)

The first plan, dated November, 1911 (the 1911 plan), shows two roads providing access within the subdivision and

---

lots now owned by the defendants. See G. L. c. 183, § 58, as amended by St. 1973, c. 185, § 1, providing in pertinent part:

"Every instrument passing title to real estate abutting a way, whether public or private, . . . shall be construed to include any fee interest of the grantor in such way . . . ."

Real estate located at the end of a way does not abut the way for the purposes of this statute and therefore carries no fee ownership of the way. *Emery* v. *Crowley*, 371 Mass. 489, 494 (1976).

Prior to the passage of G. L. c. 183, § 58, made retroactive, subject to certain restrictions not material here, by St. 1971, c. 684, § 2, a deed which described a parcel as being "on" or "by" a way, with no restricting words, conveyed title to the center line of that way if owned by the grantor, while a deed which described a parcel as "on" or "by" the "side line" of a way conveyed no fee interest in the way. *Casella* v. *Sneierson*, 325 Mass. 85, 89 (1949). The defendants' predecessors in interest conveyed four parcels, with reference to a 1911 plan, described as "bounded on" or "by" the "side line" of one of the ways, but conveyed all of the remaining parcels as "bounded on" or "by" the way.

[4]The parties are in dispute as to the proper scope of appellate review. We agree with the plaintiffs that the "clearly erroneous" test under Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974), applies, notwithstanding the large amount of stipulated and documentary evidence. See *First Pa. Mort. Trust* v. *Dorchester Sav. Bank*, 395 Mass. 614, 621 (1985). In any event, our review has entailed a close examination of all the documents, and the conclusions we draw from them do not differ from those of the trial judge.

[5]Although it is not entirely clear, the record suggests that Paine also owned additional land which was contiguous to the thirty-eight acre parcel and which also abutted other public ways in Waltham. Because the defendants do not base their claim of right on reasonable necessity, determination of this fact is not essential to our decision.

Boudreau *v.* Coleman.

1912 PLAN

Boudreau *v.* Coleman.

## COMPOSITE  SKETCH

to Lexington Street: Stanley Road, running east-west from, and perpendicular to, Lexington Street, and Chesterbrook Road, running north and south of the end of Stanley Road. From their creation in 1911, the streets have remained private ways. The 1911 plan also delineated sixty-one numbered lots, abutting all the parcel's frontage along Lexington Street, as well as all the frontage along the western edge of Chesterbrook Road north of Stanley Road, and one unnumbered lot which abutted the southeastern end of Chesterbrook Road.

The Paine heirs deeded five parcels, consisting of a total of twenty-six lots, with reference to the 1911 plan. Two of the deeds expressly reserved the grantor's right to "construct and maintain" Stanley Road, including the construction of a bridge or culvert over a brook which runs between and parallel to Lexington Street and Chesterbrook Road. Four of the five parcels were described in their respective deeds as being bounded "by the line" of Chesterbrook or Stanley Roads, the fifth having frontage only on Lexington Street. Finally, all five deeds contained both an express reservation of the right to "use and improve" a twenty-four foot strip of land bordering the brook, and common scheme restrictions relating to the construction of houses on the lots.

The second subdivision plan, dated May, 1912 (the 1912 plan), divided into lots all the remaining frontage along Chesterbrook and Stanley Roads. Those ways remained exactly as depicted on the 1911 plan. Most of the additional lots were numbered, but several were marked only with the word "reserve," which was subsequently crossed out.[6] One such "reserve" area, consisting of two lots, is at the eastern terminus of Stanley Road; the other, also consisting of two lots, is at the northern end of Chesterbrook Road, abutting its eastern sideline. The former was conveyed in 1919 together with several numbered lots. The latter was retained by the Paine heirs, along with the rest of the locus, and is now owned by the defendants. The plan also shows what is appar-

---

[6]The significance, if any, of the apparent cancellation of the word "reserve" has not been argued to the court.

ently undeveloped and undivided land, with no indication of its ownership, at both ends of Chesterbrook Road and continuing along the entire eastern boundary of the subdivision. This is the western end of the locus.

All the lots depicted on the 1912 plàn, except those previously conveyed and except two of the "reserve" lots, were deeded out with reference to that plan. The deeds for those lots abutting one of the ways described the lots as bounded "on" or "by" the way. All the deeds contain the same restrictions concerning house construction which appeared in the deeds making reference to the 1911 plan, and all the deeds for parcels abutting the brook contain the reservation by the grantor of rights to use and improve it. The 1913 deed of one parcel (including lots 62 and 63 on the 1912 plan), abutting the northeastern side of Chesterbrook Road and next to the "reserve" lots, reserved for the grantors, their heirs and assignees, for a period of thirty years, the right to construct and maintain a road over a small triangular section of that parcel. None of the deeds which refer to the 1912 plan contains any other restrictions or reservations.

The third subdivision plan filed by the Paine heirs, dated June, 1922 (the 1922 plan), shows the creation of four additional lots and an extension of Chesterbrook Road at its southern end into what appeared as undivided land on the 1912 plan. This extension of Chesterbrook Road is drawn beyond the boundaries of the new lots into undeveloped land then owned by the Paine heirs and now owned by the defendants as part of the locus. Between 1921 and 1923, the four lots were conveyed as three parcels. The deed for the first, dated before the filing of the 1922 plan and making no reference to that plan, grants a right of way over both Chesterbrook Road and "an extension thereof." The deeds for the other two parcels bounded by the extension of Chesterbrook Road refer to the 1922 plan and do not mention such a right of way.

The Paine heirs also extended Chesterbrook Road slightly beyond the northern terminus depicted on the 1912 plan. In 1928, the remaining Paine children, together with the heirs

of Edith Storer,[7] granted one Lucy Alcock a right of way over a parcel of land at the northerly end of Chesterbrook Road "to be used as an extension of said Chesterbrook Road," along with an easement over Chesterbrook and Stanley Roads, all to be appurtenant to a parcel she purchased from one Lewis Hardy on the same day.

In 1921, the Paine heirs granted the city of Waltham an easement to lay and maintain drains and sewers in and through Chesterbrook and Stanley Roads. At that time, they still owned most of the lots abutting Chesterbrook Road, and Edith Storer owned frontage on Stanley Road.

The locus came into the ownership of the defendants through several intermediate conveyances. In 1939, the Paine heirs, together with the remaining heirs of Edith Storer, conveyed a large parcel containing the locus to William Stober, who conveyed it in 1957 to Theodore Storer. In 1965, Theodore Storer conveyed that portion of the parcel which now comprises the locus to the defendants, expressly reserving an easement over the locus to Chesterbrook and Stanley Roads on ways, if any, that the defendants would construct.

The plaintiffs, owners of property shown on the three plans, are successors in interest to the original grantees from the Paine heirs.

1. *Easement by implication.* The deeds to the plaintiffs' predecessors in interest did not expressly reserve a right of way over Chesterbrook and Stanley Roads to benefit the locus. In the absence of such express reservation, the conveyance of land with reference to a plan creates such an easement, other than by necessity, "only if clearly so intended by the parties to the deed." *Scagel* v. *Jones*, 355 Mass. 208, 211 (1969), quoting from *Rahilly* v. *Addison*, 350 Mass. 660, 662 (1966). The focus of our attention in determining whether the defendants have a reserved easement by implication for passage from the locus over Chesterbrook Road and Stanley Road must be on the intent of the Paine heirs and their grantees at the time common ownership was first sev-

---

[7] Edith Storer, one of Robert Treat Paine's five children, died in 1924.

ered. See *Krinsky* v. *Hoffman*, 326 Mass. 683, 687 (1951); *Murphy* v. *Donovan*, 4 Mass. App. Ct. 519, 526 (1976). The relevant point in time, therefore, is no later than the dates on which the Paine heirs conveyed lots in accordance with the 1911 and 1912 plans.

Whether at that time the Paine heirs reserved an easement for passage over the ways shown on the plans depends upon "a presumed intention of the parties, to be gathered from the language of the instruments when read in the light of the circumstances attending their execution, the physical condition of the premises, and the knowledge which the parties had or with which they are chargeable." *Perodeau* v. *O'Connor*, 336 Mass. 472, 474 (1957), quoting from *Dale* v. *Bedal*, 305 Mass. 102, 103 (1940). See *Bacon* v. *Onset Bay Grove Assn.*, 241 Mass. 417, 423 (1922); *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.*, 284 Mass. 100, 104 (1933); *Krinsky* v. *Hoffman*, 326 Mass. at 687-688; *Rahilly* v. *Addision*, 350 Mass. at 662; *Labounty* v. *Vickers*, 352 Mass. 337, 344 (1967); *Murphy* v. *Donovan*, 4 Mass. App. Ct. at 527; Restatement of Property §§ 474, 476 (1944). The parties asserting the easement, here the defendants, have the burden of proving its existence. *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.*, 284 Mass. at 105. *Krinsky* v. *Hoffman*, 326 Mass. at 688. *Rahilly* v. *Addison*, 350 Mass. at 663-664. The burden is heavier for a grantor asserting the right to an easement by implied reservation for his benefit than for a grantee asserting such an easement by implied grant. *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.*, 284 Mass. at 105. *Dale* v. *Bedal*, 305 Mass. at 103. *Krinsky* v. *Hoffman*, 326 Mass. at 688. *Perodeau* v. *O'Connor*, 336 Mass. at 474. Restatement of Property § 476 comment c.

Neither the relevant instruments nor the attendant circumstances clearly indicate an intention on the part of the parties to the original conveyances to create an unlimited easement for the benefit of the grantors. The grantors were willing to part with their fee interest in the ways. A few of the first parcels to be conveyed were described by the grantors as being on or by "the side line" of the paper street, Stanley

Road, thus preserving their fee interest in Stanley Road and
their corresponding right of access to the additional lots later
appearing on the 1912 plan, but all of the subsequent parcels
were conveyed together with the fee to the abutting way. See
*Casella v. Sneierson*, 325 Mass. 85, 89 (1949). Most of the
instruments conveying lots shown on the 1911 and 1912
plans contain carefully defined references to reserved ease-
ments and restrictions. The express reserved easements relate
to the brook running through some of the lots and, in several
of the deeds, to the right to construct and maintain the pro-
posed ways. In none of the deeds, however, is any reference
made to an easement for passage over the ways from the lo-
cus to Lexington Street. Having expressly reserved some
easements, failure to reserve others must be regarded as sig-
nificant. See *Krinsky v. Hoffman*, 326 Mass. at 688. Also
significant is what does *not* appear on the 1911 and 1912
plans referred to in the deeds. The plans show only a minor
portion of the locus and do not designate its boundaries nor
indicate its ownership. Nor do they show any proposed exten-
sion of the ways into the locus. Certainly there is nothing on
the plan to indicate that the grantors intended to develop the
locus into forty-one house lots. Contrast *Murphy v. Mart Re-
alty, Inc.*, 348 Mass. 675, 676-678 (1965); *Labounty v. Vick-
ers*, 352 Mass. at 341-342.

Reasonable necessity is an important element to consider
in determining if it was the presumed intent of the parties to
a deed to create an easement. *Mt. Holyoke Realty Corp. v.
Holyoke Realty Corp.*, 284 Mass. at 105. *Krinsky v. Hoff-
man*, 326 Mass. at 688. Restatement of Property § 476 com-
ment g. However, the defendants made no showing of reason-
able necessity. There is no evidence that at the crucial time
in 1912 (or, indeed, at any other time) the locus was land-
locked without use of the ways proposed on the plans.

Open and obvious use consistent with a claimed implied
easement prior to a conveyance may also be a circumstance
indicative of an intent on the part of the grantors and grant-
ees to create such an easement. *Mt. Holyoke Realty Corp. v.
Holyoke Realty Corp.*, 284 Mass. at 108. *Krinsky v. Hoff-*

*man*, 326 Mass. at 687. Restatement of Property § 476 comment i. There was no showing, however, of any use of the ways for the benefit of the locus at the time of the original conveyances in this case. See *Goldstein* v. *Beal*, 317 Mass. 750, 756 (1945). Contrast *Perodeau* v. *O'Connor*, 336 Mass. at 475; *Labounty* v. *Vickers*, 352 Mass. at 341-342; *Flax* v. *Smith*, 20 Mass. App. Ct. 149, 152 (1985).

We turn now to the factors upon which the defendants rely in their attempt to show the requisite intent. They point, first, to the "reserve" lots appearing on the 1912 plan and contend that, because of their strategic location at the ends of two of the ways, prospective grantees were placed on notice of the grantors' intention to extend the ways as necessary for future development of the locus. Two of these "reserve" lots, those at the end of Stanley Road, were conveyed in 1919 as part of a residential parcel. The two remaining "reserve" lots, those at the northern end of Chesterbrook Road which are now part of the locus, appear on the 1912 plan as similar to the other house lots, except that they are unnumbered, they do not have an indication of their square footage, and they had initially been labeled "reserve," with that label crossed out sometime before the plan was recorded. We do not think that a reasonable person examining the plan would have known that the grantors were reserving the lots for the purpose of extending Chesterbrook Road into a new subdivision. Contrast *Labounty* v. *Vickers*, 352 Mass. at 344-345. The label "reserve" suggests an intent to withhold sale of the lots for some reason. There is at best an ambiguity as to what the grantors' purpose was, particularly in light of the fact that the word "reserve" was crossed out. "Implied terms cannot be imported into a conveyance because of the needs of one of the parties of which the other party has neither knowledge nor notice. . . ." *Dale* v. *Bedal*, 305 Mass. at 104.

The defendants further argue that the Paine heirs' reservation of an easement over a small triangular parcel contiguous to the "reserve" lots at the end of Chesterbrook Road is consistent with an intent to use those lots to construct a road to provide access to the locus. The express reservation appears

in a 1913 deed conveying the triangular parcel along with two abutting house lots (lots 62 and 63 on the 1912 plan). Only rights held by grantors at the time of the conveyance may be expressly reserved in a deed. To the extent that the grantors' rights were fixed when they first conveyed lots with reference to the 1912 plan, they cannot, by reservation, create a new right. See *Darman* v. *Dunderdale*, 362 Mass. 633, 639-640 (1972). In any event, the easement, by its express terms, expired thirty years after its creation in 1913. As such, it does not clearly indicate an intent to reserve an easement, unlimited in time, over the entire length of the ways.[8]

The defendants also point to certain later events which they assert indicate an intent at the relevant time to create the claimed easement. "Where the intent is doubtful, the construction of the parties shown by the subsequent use of the land may be resorted to, if such use tends to explain or characterize the deed, or to show its practical construction by the parties, providing the acts relied upon are not so remote in time or so disconnected with the deed 'as to forbid the inference that they had relation to it as parts of the same transaction or were made in explanation or characterization of it.' [citations omitted]." *Bacon* v. *Onset Bay Grove Assn.*, 241 Mass. at 423. See *Murphy* v. *Donovan*, 4 Mass. App. Ct. at 527.

The defendants rely, in particular, on the following actions of the Paine heirs, in each instance taken without objection from the original grantees or their successors in interest: the 1922 plan showed an extension of one of the ways and creation of an additional four lots, and lots were conveyed and the street extended in accordance with that plan; in 1928 they granted Lucy Alcock the right to use a new extension of one of the ways; and, after many of the lots abutting the ways had been conveyed, they granted easements in the ways

---

[8]A close look at the actual dimensions of lot 62 and the "reserve" lot abutting it on the 1912 plan may suggest a further ambiguity as to the grantors' intent with regard to the possible extension of Chesterbrook Road through the "reserve" lots to the locus. However, that point was not argued below and was not considered by the trial judge.

to the city of Waltham for the purpose of laying drainage and sewer pipes.

We think the described events merit little weight in determining the presumed intent of the parties to the original deeds conveying lots shown on the 1911 and 1912 plans. The particular actions of the grantors were all unilateral and removed in time from pertinent transactions. See *Murphy* v. *Mart Realty, Inc.*, 348 Mass. at 681. Moreover, none of the actions referred to, even those in excess of the grantors' rights, so seriously threatened the rights of the owners of property abutting the ways that they could reasonably have been expected to protest.

We need not consider what result might have been reached had more been shown by the defendants than was stipulated. For example, no expert testimony was offered. Confining our judgment to the facts in the record, we conclude that the defendants failed to sustain their burden of clearly showing an easement by implication.

2. *Rights derived from ownership of the "reserve" lots.* The defendants contend, alternatively, that their right to the claimed easement arises out of their ownership of the entire locus, a part of which consists of the two "reserve" lots abutting Chesterbrook Road. Concededly, the "reserve" lots are part of the locus, and their ownership carries with it the same right to use Chesterbrook Road and Stanley Road for access to Lexington Street which all other abutters enjoy. The issue before us is whether that right is limited to passage from the "reserve" lots, or whether it also includes a right to pass from lots into which the remainder of the locus may be subdivided.

In a case involving the express reservation of an easement, but with facts vastly different from the present ones, this court stated that "[a]n easement is to be interpreted as available for use by the whole of the dominant tenement existing at the time of its creation." *Pion* v. *Dwight*, 11 Mass. App. Ct. 406, 410 (1981). Nevertheless, it is clear from a reading of that opinion that the scope of a reserved easement depends in each case upon the parties' intent, to be gleaned from the

relevant instruments and circumstances. See *Butler* v. *Haley Greystone Corp.*, 352 Mass. 252, 257 (1967); *Darman* v. *Dunderdale*, 362 Mass. at 640. Moreover, the general proposition stated in *Pion* is inapplicable if by subdivision of the dominant estate "some additional burden would thereby be placed on the servient estate." *Rice* v. *Vineyard Grove Co.*, 270 Mass. 81, 86 (1930).

Concerning the Paine heirs' presumed intent with regard to the scope of the reserved easement appurtenant to the "reserve" lots, we think it significant that they are shown as separate lots on the 1912 plan, with no clear indication of further planned development. There is nothing in the record to show that after the Paine heirs began in 1912 to convey the lots abutting Chesterbrook and Stanley Roads along with the fee interest in those ways, they intended to retain any substantial easements other than those appurtenant to the "reserve" lots shown on the 1912 plan. See *Butler* v. *Haley Greystone Corp.*, 352 Mass. at 257; *Darman* v. *Dunderdale*, 362 Mass. at 639-640. Compare *Murphy* v. *Mart Realty, Inc.*, 348 Mass. at 679. With regard to the placement of an additional burden on the servient estate, effectuation of the defendants' plan for a subdivision with forty-one house lots, without question, would increase the use of the ways. The trial judge in this case ruled, after taking a view, that such increased use made of the ways would be "overburden of easement rights in the ways."[9] See *Davenport* v. *Lamson*, 21 Pick. 72 (1838); *Murphy* v. *Mart Realty, Inc.*, 348 Mass. at 679; *Brassard* v. *Flynn*, 352 Mass. 185, 190 (1967).

For purposes of clarification, the second sentence of the second paragraph of the substantive provisions of the judgment is modified by inserting after the words "they may not lawfully use said ways" the phrase "in accordance with the subdivision plan." As so modified the judgment is affirmed.

*So ordered.*

---

[9]We need not decide what lesser use of the ways by the defendants would not constitute an overburden.