EARL C. HARRINGTON & others[1] *vs.* MAURICE P. LAMARQUE
& others.[2]

No. 95-P-489.

Suffolk. October 10, 1996. - March 27, 1997.

Present: PERRETTA, PORADA, & GREENBERG, JJ.

*Easement. Real Property,* Easement. *Way,* Private. *Motor Vehicle,* Parking.

A Land Court judge erred in ordering summary judgment, ruling as a mat-
ter of law that an implied right to pass and repass on a private way in a
subdivision that was reasonably necessary to use deeded rights to a
beach did not include an implied easement to park on the private way,
where the record demonstrated the existence of questions of fact, in the
particular circumstances, regarding the intended scope of the implied
easement. [374-377]

CIVIL ACTION commenced in the Superior Court Depart-
ment on September 1, 1993.

After transfer to the Land Court Department, the case was
heard by *Karyn F. Scheier,* J., on motions for summary judg-
ment.

*Richard L. Wainwright* for the plaintiffs.
*Duane P. Landreth* for the defendants.

PERRETTA, J. All the parties in this action own lots in a
subdivision in Harwich. The plaintiffs' lots are situated about
one-half mile from a private beach reserved for use by the
subdivision owners. They claim that their express easements
to use the beach and to pass and repass over a strip providing
access to the beach from a road in the subdivision give them
an implied easement to park on that road. The defendants'
lots abut the road. On cross motions for summary judgment,
the Land Court judge concluded that although the plaintiffs

---

[1]Francis A. Recka and Joseph F. Uzzo.
[2]Michelle M. Lamarque, Edward L. Ladin, Kathryn A. Ladin, and Vic-
toria L. Luftman.

have a general right of passage along the road, their right of passage does not imply a right to park. On the plaintiffs' appeal, we conclude that whether there exists an implied right to park on the road turns on genuine issues of fact that must be resolved and reverse the judgment.

1. *The undisputed facts.* There are eight lots in the subdivision which are abutted by The Dunes Road to the north and beach to the south. That strip of beach is designated as "Beach Reserved For Recreation" (beach) on a composite of a portion of the subdivision plan. There is a five-foot wide pedestrian path situated between two of the defendants' lots which runs from The Dunes Road to the beach and over which the plaintiffs have the right "to pass and repass." Title to the pedestrian path and the reserved beach is in Allen's Harbor Beach Association. It appears from various plans that most, if not all, of the roadways in the subdivision as developed are thirty feet wide except for the portion of The Dunes Road that abuts the defendants' lots.[3] There the width of the road increases to forty feet.

We turn to the parties' chain of title, the defendants' first. In 1946, the developer of the subdivision, Allen's Harbor Property, Inc., conveyed what was then Lots 1 and 2 (now Lots 1A, 1B, and 2) to Benjamin F. C. Whitehouse and Gladys M. Whitehouse and Lot 3 to William E. Foster and Alta M. Foster. Thereafter, the Whitehouses built a house which straddled the boundary line between their two lots.

Following the death of Gladys M. Whitehouse, the surviving spouse of Benjamin F. C. Whitehouse, the executor of her estate recorded a "Plan of Land in Harwich, Massachusetts" (the Whitehouse Plan). The Whitehouse Plan reconfigured the original Lots 1 and 2 on the subdivision plan, and created Lot 1A, which was vacant, and a house lot which included Lots 1B and 2.

On November 1, 1991, the executor conveyed the vacant Lot 1A to the defendant Luftman. Lots 1B and 2 were conveyed to the defendants Lamarque on December 24, 1992. William E. Foster died in 1963 and Alta M. Foster, the surviving spouse, died in 1971. The trustees under her will then conveyed Lot 3 to Eleanor P. Caterino, who, in turn, conveyed the lot to the defendants Ladin on September 26,

---

[3]Those lots are numbered 1A, 1B, 2, and 3 on the composite.

1989. The five-foot wide pedestrian pathway runs between Lots 2 and 3. All the deeds to Lots 1A, 1B, 2 and 3 describe those lots as being bounded "by The Dunes Road" and thereby convey to the abutting lot owners (the defendants) the fee in The Dunes Road to its center line.

Title to those properties now owned by the plaintiffs came to them as follows. On March 5, 1979, Allen's Harbor Properties, Inc., conveyed the properties to Charles W. Jessen, Trustee of Allen's Harbor Properties Trust (the trust). The deed also recited that the properties were conveyed ". . . together with fee in all private ways shown on any of the above mentioned Plans and the fee in that area marked 'Beach Reserved for Recreation' on . . . [the Subdivision plan]."[4] Consideration for the conveyance was stated as "distribution pursuant to corporate liquidation."

Thereafter the trust conveyed a large parcel to Harbor Pines Realty, Inc. (Harbor Pines). That large parcel was further subdivided through a plan of land entitled "Plan of Land in Harwichport, Mass. for Harbor Pines Realty, Inc.," creating what today is the Harrington Lot. The Harrington Lot was conveyed on July 19, 1979, by Harbor Pines to Elizabeth B. Harrington who, on June 3, 1988, conveyed the lot to herself and Earl C. Harrington. Lots were also conveyed by the trust to the plaintiffs Uzzo by deed dated May 3, 1979, and to the plaintiffs Recka by deed dated May 25, 1979. All the deeds in the plaintiffs' chain of title convey:

> "the right to use the land marked 'Beach Reserved for Recreation' [on the subdivision plan] and the right to pass and repass over the strip of land five (5) feet wide lying between lots 2 and 3 on said plan, all in common with the owners and occupants of the other lots on said plan lying East of Brooks Road."[5]

All the deeds into the plaintiffs are silent with respect to rights to park on The Dunes Road. However, prior to

---

[4]This language in the deed to the trust does not, as the plaintiffs contend, give rise to a material question whether the developer thought it retained the fee in *all* the subdivision ways. As earlier noted, the developer deeded out several lots abutting The Dunes Road in 1946, including the lots now owned by the defendants, without retaining the fee in The Dunes Road.

[5]The plaintiffs' and the defendants' lots are all to the east of Brooks Road.

purchasing their lots within the subdivision, each of the plaintiffs was told by a representative of the grantor trust that they and their families could park on The Dunes Road in order to use the pedestrian pathway to the beach. Further, each of the plaintiffs has parked on The Dunes Road in front of the defendants' lots on a regular basis during the summer since 1979. Indeed, during certain years, Ms. Whitehouse or representatives of the trust issued parking permits or other forms of identification to the plaintiffs and other subdivision lot owners. One subdivision lot owner, not a party to this dispute, has parked in front of the defendants' lots since 1951, first as a guest of a lot owner and, since 1978, as a lot owner in his own right.

After the defendants Luftman and Lamarque purchased their lots from Ms. Whitehouse's executor, and during the winter of 1993, they placed plantings and a split-rail fence parallel to the northerly boundary of their properties and within the layout of The Dunes Road. The purpose of the fence was to prevent parking in front of their lots. The fence encroaches on The Dunes Road by seven and one-half to ten and one-half feet.

2. *Discussion*. In granting summary judgment to the defendants, the Land Court judge reasoned as follows. As residents of the subdivision, the plaintiffs have rights in all private ways in the subdivision to the extent that use of those private ways is necessary to access their property. See *Fox* v. *Union Sugar Refinery*, 109 Mass. 292, 297-298 (1872); *Hill* v. *Taylor*, 296 Mass. 107, 116 (1936); *Canton Highlands, Inc.* v. *Searle*, 9 Mass. App. Ct. 48, 54-55 (1980). Further, because the plaintiffs possess deeded rights to access and use the pedestrian pathway and the beach, they also possess by implication the right to pass and repass over The Dunes Road to the pathway. See *Scagel* v. *Jones*, 355 Mass. 208, 210-211 (1969); *Jackson* v. *Knott*, 418 Mass. 704, 711-712 (1994). She concluded, however, that an implied right to pass and repass does not include the right to park. See *Opinion of the Justices*, 297 Mass. 559, 562-564 (1937) (right to pass and repass does not include the right to park but only to make temporary and reasonable stops incidental to the travel).

On appeal, the plaintiffs argue that when the original easement for use of the pedestrian pathway and beach was created, the parties intended that the widened portion of The

Dunes Road be impressed with an easement for the parking of vehicles as such use is reasonably necessary for the full enjoyment of their deeded rights.[6] The Land Court judge's conclusion that the plaintiffs have no right to park on The Dunes Road was made as matter of law, that is, an implied right to pass and repass did not imply a right to park. While we agree that a right to pass and repass does not normally imply a right to park, we think the Land Court judge erred in not considering, as matter of fact, whether the scope of this particular implied easement included, on the circumstances presented, the right to park on the widened portion of The Dunes Road.[7]

Whether the developers and the grantees of Lots 1A, 2 and 3 (the defendants' predecessors) intended to create an implied parking easement involves questions of fact. "[I]mplied easements, whether by grant or by reservation, do not arise out of necessity alone. Their origin must be found in a presumed intention of the parties, to be gathered from the language of the instruments when read in the light of the circumstances attending their execution, the physical condition of the premises, and the knowledge which the parties had or with which they are chargeable." *Dale* v. *Bedal*, 305 Mass. 102, 103 (1940). See *Perodeau* v. *O'Connor*, 336 Mass. 472, 474 (1957); *Boudreau* v. *Coleman*, 29 Mass. App. Ct. 621, 629 (1990). Additionally, "[r]easonable necessity is an important element to consider in determining if it was the presumed intent of the parties to a deed to create an easement." *Id.* at 630. See also *Krinsky* v. *Hoffman*, 326 Mass. 683, 688 (1951). Further, "the rule that a deed is to be construed most strongly against the grantor may render it more difficult to imply an

---

[6]The plaintiffs make no argument on appeal concerning the Land Court judge's conclusion that they failed to establish a parking easement by prescription.

[7]Relying on *Delconte* v. *Salloum*, 336 Mass. 184, 189 (1957), the defendants argue that parking for an extended period on a private way violates the rights of persons having an easement of travel over the entire width of the way. The argument begs the issue. First, the defendants cannot have an easement over that which, as here, they own in fee. Moreover, if an implied parking easement exists, *Delconte* is inapplicable and the only argument left to the defendants is that a parking easement overburdens the right of passage. The defendants, of course, remain free to make any use of their fee in the southerly half of The Dunes Road as does not interfere with the rights of others, including the plaintiffs. See *Brassard* v. *Flynn*, 352 Mass. 185, 189 (1967).

easement by reservation for the grantor's benefit than an easement by grant for the grantee's benefit." *Dale* v. *Bedal,* 305 Mass. at 103.

Although the language of the 1946 deeds and the developer's failure to reserve a parking right while expressly reserving other rights do not assist the plaintiffs, the physical circumstances of the premises do give some credence to their claim. There is the fact of the greater width of the pertinent portion of The Dunes Road. There is also the fact that the plaintiffs' express easement of access to the beach is along the pedestrian pathway which is situated within the forty-foot wide portion of The Dunes Road rather than along other pedestrian pathways from the narrower portion of that road to the beach.

Additionally, those pathways over which the plaintiffs do not have a right of access to the beach appear to be nearer to the lots of two, and perhaps all, of the plaintiffs.

Further, we are not prepared to conclude on the record before us and in the circumstances of this case that parking on The Dunes Road is, as matter of law, more a convenience for the plaintiffs rather than reasonably necessary for the enjoyment of their beach rights. Compare *Krinsky* v. *Hoffman,* 326 Mass. at 688-689. The actual walking time and distance between the plaintiffs' lots and the pedestrian pathway available to them could be found, as matter of fact, to be so great that a parking easement was reasonably necessary for the enjoyment of their right to use the beach. See *Tindley* v. *Department of Envtl. Quality Engr.,* 10 Mass. App. Ct. 623, 627-628 (1980).

The plaintiffs also submitted affidavits setting out events which they argue show an intent at the relevant time to create a parking easement. " 'Where the intent is doubtful, the construction of the parties shown by the subsequent use of the land may be resorted to, if such use tends to explain or characterize the deed, or to show its practical construction by the parties, providing the acts relied upon are not so remote in time or so disconnected with the deed "as to forbid the inference that they had relation to it as parts of the same transaction or were made in explanation or characterization of it" [citations omitted].' " *Boudreau* v. *Coleman,* 29 Mass. App. Ct. at 632, quoting from *Bacon* v. *Onset Bay Grove Assn.,* 241 Mass. 417, 423 (1922).

It appears from the affidavits that the Whitehouses (predecessors of two of the defendants) restricted parking on The Dunes Road to subdivision lot owners as did other successors of the developers. Parties owning distant lots in the subdivision had parked there since at least 1951. On this basis, that both parties to the conveyance (the Whitehouses and the developers and their successors) consistently have recognized the right of subdivision lot owners to park on The Dunes Road, one reasonably could infer, although not compelled to do so, that such a right was implied and intended.

We do not decide that the materials submitted in opposition to the defendants' motion for summary judgment establish the existence of an implied parking easement.[8] However, we do conclude that those materials were sufficient to show the existence of questions of fact which must be resolved before any determination as to the scope of the plaintiffs' easement can be made.

That paragraph of the judgment which orders the defendants, who did not cross appeal, to remove the split-rail fence and plantings erected within the boundaries of The Dunes Road and to refrain from any further obstruction of that road is affirmed. Those paragraphs of the judgment which provide that the plaintiffs do not have easement rights to park on the widened portion of The Dunes Road are reversed, and the matter is remanded to the Land Court for further proceedings to determine the scope of the plaintiffs' easement.

*So ordered.*

---

[8]The plaintiffs sought summary judgment only on that part of their complaint that sought a declaration that the defendants had unlawfully placed plantings and a split-rail fence within the boundaries of The Dunes Road. Because the Land Court judge ordered the defendants to remove the plantings and the fence and concluded that the scope of the plaintiffs' easement involved only a question of law, she treated the plaintiffs' complaint as a cross motion for summary judgment.