THOMAS ZOTOS & another[1] *vs.* DAVID R. ARMSTRONG, trustee.[2]

No. 04-P-454.

Suffolk. February 10, 2005. - June 3, 2005.

Present: ARMSTRONG, C.J., BROWN, & KAFKER, JJ.

*Real Property,* Easement. *Easement. Necessity.*

A Land Court judge erred in declaring that the plaintiffs in a civil action held
an easement by implication over a circular driveway situated on an adjacent
parcel of land owned by the defendant, where the deed to the plaintiffs
granted to them a specific express easement for access and egress, and
specifically reserved easements for the benefit of the grantor; therefore, the
deed's silence with respect to any easement over the defendant's lot
negated any intention to provide an easement over that lot. [656-658]

CIVIL ACTION commenced in the Land Court Department on
July 23, 1998.

The case was heard by *Leon J. Lombardi,* J.

*Liam C. Floyd* for the defendant.

BROWN, J. David Armstrong, as trustee of Six Birch Realty
Trust (Armstrong), appeals from a judgment of the Land Court
(1) declaring that Thomas and Nancy Zotos, owners of 58 Littles
Lane,[3] Marshfield, hold an easement by implication over the
circular driveway situated on an adjacent parcel of land owned
by Armstrong, and (2) enjoining Armstrong from interfering
with the Zotoses' use of the driveway. We conclude that the
judge erred.

Many of the underlying facts are not in dispute. The proper-
ties owned by the Zotoses and Armstrong are located on the
North River in Marshfield and were once held in common
ownership by Aldro S. French. Pursuant to a plan entitled "Plan

---

[1] Nancy Zotos.

[2] Of Six Birch Realty Trust.

[3] It appears that the property has since been renumbered as 76 Littles Lane.

of Land Off Littles Lane, Marshfield, MA," dated February 24, 1995, and endorsed by the planning board pursuant to G. L. c. 41, § 81P (plan), French subdivided the property into lot D-1, currently owned by the Zotoses, and lot D-2, currently owned by Armstrong. The plan depicts access to both properties from the public way, Littles Lane, over an easement located adjacent to the southerly property lines of lots D-1 and D-2 and labeled as "EASEMENT 'D'," as shown in the appendix to this opinion. For many years prior to the conveyances, French used an unpaved circular drive to access his home on what is now lot D-1, the Zotoses' property.[4] The plan depicts this circular drive as extending from Littles Lane, a public way, westerly along Easement D, with the first cutout at the easterly one-third of lot D-2, crossing over lot D-2 and into lot D-1 in a semicircle, with a second cutout on the easterly one-third of lot D-1's southerly property line, back to Easement D and then easterly back to the public way. The semicircle portion of the driveway is roughly split in half by the property lines of lots D-1 and D-2. As depicted on the plan, it is apparent that both lots D-1 and D-2 would have access to their respective properties by the separate cutouts without ever having to cross the property lines.

A purchase and sale agreement was signed by the Zotoses and French on January 29, 1996.[5] The closing, delayed in part by septic system issues, did not take place until May 30, 1996.[6] At the closing, $20,000 was retained in escrow pending the completion of the installation of a new septic system. The deed to the Zotoses provides an express easement "for all purposes over Easement 'D' . . . for access, egress and utility and water connection purposes." The deed also specifically reserves certain easements for the benefit of the grantor. The deed is silent as to any right to pass over lot D-2.

Nancy Zotos, who handled the transaction for herself and her

[4]Lot D-2 was then and remained undeveloped at the time of trial.

[5]The judge's finding that the purchase and sale agreement never became part of the record was clearly erroneous, as the transcript reflects it was admitted as exhibit 26, and numerous references to it were made in the transcript by the parties and the judge.

[6]The judge correctly noted that the deed is dated May 14, 1996. There appeared to be no dispute at trial, however, that the closing took place on May 30, 1996.

husband, claims that although she picked up the new septic system plans from the town's director of public health, she forwarded the plans to her attorney without ever looking at them. The new septic system was installed between May 29, 1996, and June 13, 1996. The portion of the circular driveway located on lot D-1 was removed to make way for the new septic system's leaching field. This removal obliterated the portion of the circular driveway that provided access directly from Easement D to lot D-1, the Zotoses' property. The plans for the new septic system depicted a "proposed driveway" with an entrance to lot D-1 west of the original driveway's cutout on lot D-1, but the proposed driveway was never constructed. The result was that the only existing driveway access to lot D-1 from Easement D was over the portion of the circular driveway that runs from Easement D over lot D-2 to lot D-1. Within two years of the closing, however, French posted "no trespassing" signs on lot D-2 and sought to prevent the Zotoses from using the portion of the driveway located on that lot.

On July 23, 1998, the Zotoses initiated this declaratory judgment action against French seeking a declaration that they have an easement by necessity or implication over the driveway located on lot D-2. By deed dated December 8, 1999, French transferred lot D-2 to Armstrong, who was subsequently substituted as a party in this action.

The Land Court judge found that French and members of his family had utilized the circular driveway for vehicular access to what is now the Zotoses' dwelling for approximately sixty years. The judge concluded that French intended to provide some means of vehicular access to lot D-1 and that because continued use of the circular driveway on lot D-2 is reasonably necessary for the enjoyment of lot D-1, the Zotoses are entitled to an easement by implication, appurtenant to lot D-1, over the portion of the circular driveway situated on lot D-2 for vehicular access to lot D-1. The judge apparently did not credit testimony from either French or his real estate broker that they expressly told Nancy Zotos that she would have no access to lot D-1 over lot D-2. But see note 7, *infra.*

It is true that implied easements "have been recognized when land was formerly in common ownership, when use of one part

of the land was made for the benefit of another part up until the time of the severance of ownership, and when the use of one part is both reasonably ascertainable and reasonably necessary for the enjoyment of the other part." *Flax* v. *Smith*, 20 Mass. App. Ct. 149, 152 (1985). "The implied easement arises not so much from necessity alone as from the presumed intention of the parties . . . ." *Hurley* v. *Guzzi*, 328 Mass. 293, 296 (1952). That presumed intention is "to be gathered from the language of the instruments when read in the light of the circumstances attending their execution, the physical condition of the premises, and the knowledge which the parties had or with which they are chargeable." *Boudreau* v. *Coleman*, 29 Mass. App. Ct. 621, 629 (1990), quoting from *Perodeau* v. *O'Connor*, 336 Mass. 472, 474 (1957). "[T]he presumption of intent in such cases is a presumption of law which 'ought to be and is construed with strictness.' " *Joyce* v. *Devaney*, 322 Mass. 544, 549 (1948), quoting from *Orpin* v. *Morrison*, 230 Mass. 529, 533 (1918).

In *Joyce* v. *Devaney*, 322 Mass. at 549, the Supreme Judicial Court rejected an implied easement theory where an express easement contained in a deed fell eighteen feet short of providing access to the plaintiff's garage. Notwithstanding that the only practical entrance to the plaintiff's garage was by way of a portion of the defendant's driveway, and the obvious reasonable necessity of such use, the court held that the express easements in the deeds "negatives . . . any intention to create easements by implication." *Ibid.* The court further reasoned that "[w]hat the parties may have intended cannot override the language of the deeds." *Id.* at 549-550. Similarly, we have held that "[h]aving expressly reserved some easements, failure to reserve others must be regarded as *significant*" (emphasis added). *Boudreau* v. *Coleman*, 29 Mass. App. Ct. at 630. See *Krinsky* v. *Hoffman*, 326 Mass. 683, 688 (1951).

The deed to the Zotoses granted to them an express easement over Easement D for "access [and] egress," and specifically reserved easements for the benefit of the grantor. Notwithstanding the long history of use of lot D-2 to access lot D-1, the deed's silence with respect to any easement over lot D-2 is significant and, we think, negatives any intention to provide an easement over lot D-2. We have considered whether the

knowledge the parties had or with which they are chargeable at the time of the conveyance distinguishes this case from *Joyce* v. *Devaney, supra,* but conclude that it does not. We can infer that from residing on the property, French was aware of the relatively steep slope of the land where the proposed new driveway is located on the septic system plan. In addition, the judge found that French knew before he conveyed the property to the Zotoses that installation of the septic system would obliterate the existing driveway's access to lot D-1 from Easement D.[7] Indeed, the septic system plan does depict a new circular drive to replace the old with access from Easement D directly to lot D-1 in a location west of the original access and apparently joining, eventually, a portion of the old driveway located on lot D-2, although access to Easement D from lot D-2 is not shown on the septic system plan. While it may be that the septic system design supports the inference that French intended to provide some form of driveway access to lot D-1, it does not support the inference that the access was to be over the existing driveway on lot D-2. Indeed, if his intention had been to provide access over lot D-2, there would have been no need to include a new driveway in the septic system plan. French's obligation, if any, to install a driveway west of the original driveway on lot D-1 is not before us.

The judgment is reversed, and a new judgment shall enter declaring that the Zotoses do not have an easement by implication over the driveway located on lot D-2.

*So ordered.*

---

[7]Given that Nancy Zotos testified that she forwarded to her attorneys the plans for the septic system well before the closing, the inference may be drawn that she, too, had constructive knowledge of the location of the septic system and that the installation of it would obliterate driveway access to D-1 from Easement D. Nancy Zotos also testified that she knew that French was retaining ownership of lot D-2, including "half of the driveway."