Kern, Leila R., J.
This action stems from a conveyance of land from the plaintiff, Robert D. Quirk, as trustee of the Eastleigh Farm Preservation Trust, to the defendant, Allen M. Glick. After the conveyance, Quirk filed a complaint asking this court to declare he has an implied easement with respect to a septic system on Glick’s property. Quirk also alleges misrepresentation, negligent misrepresentation, breach of contract, and a violation of G.L.c. 93A. In response, Glick filed an answer and counterclaim, alleging trespass and asking this court to declare Quirk does not have an easement over the septic system. Now before this court is Glick’s Motion for Summary Judgment and Quirk’s Cross Motion for Summary Judgment. For the following reasons, Glick’s Motion for Summary Judgment is ALLOWED and Quirk’s Cross Motion is DENIED.
BACKGROUND
The relevant disputed and undisputed facts are as follows.
In October 1999, Quirk purchased the Eastleigh Farm, located in Framingham, MA, from Glick. At that time, the farm consisted of two parcels of land under common ownership, Parcel A, and Lot 1, together totaling approximately 125 acres. Lot 1 consisted of approximately 14 acres. Among other structures, Lot 1 includes the “boarding house,” which is a multi-fam-ily structure occupied by Quirk’s tenants.
Quirk and Glick negotiated a purchase and sale agreement which was signed on September 10, 1999. As part of the sale, Glick took a mortgage for a substantial part of the purchase price. Soon after the conveyance, Quirk fell into arrears on his payment obligations, and Glick instituted foreclosure proceedings. In order to halt the foreclosure, Quirk agreed to convey part of Lot 1 back to Glick.
Thereafter, Lot 1 was divided into Lots 1A and IB. Lot 1A contains the existing structures and consists of 10.8481 acres. Lot IB, known as the “sheep meadow,” consists of approximately 2.2307 acres. In accordance with the settlement agreement, Quirk conveyed the sheep meadow to Glick by deed dated January 31,2001.
While the boarding house remained on Lot 1A, it is serviced by a septic system located on the sheep meadow. In August 2005, Glick informed Quirk the septic system was on the sheep meadow and demanded Quirk move it.[2] Glick again asked Quirk to remove the septic system a year later, and in October 2007, Glick told Quirk he was going to have a contractor cut and cap the existing septic system. At the same time, the Framingham Board of Health informed Quirk they would have to “immediately condemn” the boarding house, and the tenants would have to vacate the premises, should Glick cap the septic system.
DISCUSSION
I. Standard of Review
Summary judgment is appropriate when the summary judgment record shows “there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c); DuPont v. Comm’r of Corr., 448 Mass. 389, 397 (2007). A fact is “material” if it would affect the outcome of the suit. Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is “genuine” where a reasonable finder of fact could return a verdict for the non-moving party. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991), citing Anderson, 477 U.S. at 252. The moving party bears the initial burden of demonstrating the absence of a triable issue and the summary judgment record entitles him to judgment as a matter of law. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002), citing Pederson v. Time, Inc., 404 Mass. 14, 17 (1989); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). The moving party may satisfy his burden by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating the non-moving party has no reasonable expectation of proving an essential element of his case at trial. Flesner, 410 Mass. at 809; Kourouvacilis, 410 Mass. at 716 (adopting reasoning contained in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), that “the burden on the moving party may be discharged by ‘showing’ . . . that there is an absence of evidence to support the nonmoving party’s case”).
In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. Jupin v. Kask, 447 Mass. 141, 143 (2006), citing Coveney v. President & Trs. of the Coll. *222 of the Holy Cross, 388 Mass. 16, 17 (1983); see Simplex Techs., Inc. v. Liberty Mat. Ins. Co., 429 Mass. 196, 197 (1999). If the moving party has carried his burden, and the opposing party has not responded with specific facts to establish a genuine, triable issue, the court grants the motion for summary judgment. Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 554 (1976); see Ng Bros., 436 Mass. at 644 (stating even where the facts are disputed, “summary judgment is still available if the party with the burden of proof at trial . . . fails to present in the summary judgment record, taking everything it says as true and drawing all reasonable inferences in its favor, sufficient facts to warrant a finding in its favor”), citing White v. Univ. of Mass. at Boston, 410 Mass. 553, 557 (1991).
II. Quirk’s Claims
A. Implied Easement
Quirk argues he is entitled to an implied easement on the sheep meadow for the continued use of the septic system. Implied easements, such as the one argued for by Quirk, “have been recognized when land was formerly in common ownership, when use of one part of the land was made for the benefit of another part up until the time of the severance of ownership, and when the use of one part is both reasonably ascertainable and reasonably necessary for the enjoyment of the other part.” Zotos v. Armstrong, 63 Mass.App.Ct. 654, 657 (2005), quoting Flax v. Smith, 20 Mass.App.Ct. 149, 152 (1985). Although reasonable necessity is one factor, Boudreau v. Coleman, 29 Mass.App.Ct. 621, 630 (1990), “(t]he implied easement arises not so much from necessity alone as from the presumed intention of the parties.” Zotos, 63 Mass.App.Ct. at 657, quoting Hurley v. Guzzi, 328 Mass. 293, 296 (1952). That presumed intent is “to be gathered from the language of the instruments when read in the light of the circumstances attending their execution, the physical condition of the premises, and the knowledge which the parties had or with which they are chargeable.” Reagan v. Brissey, 446 Mass. 452, 458 (2006), quoting Labounty v. Vickers, 352 Mass. 337, 344 (1967). “The presumption of intent of such cases is a presumption of law [that] ‘ought to be and is construed with strictness.’ ” Zotos, 63 Mass.App.Ct. at 657, quoting Joyce v. Devaney, 322 Mass. 544, 549 (1948).
The burden of proving the existence of an implied casement rests with the party asserting the existence cf such an easement. Reagan, 446 Mass. at 458. It is a general rule of construction that the language of a deed is construed most strongly against the grantor. Estes v. Demollo, 61 Mass.App.Ct. 638, 642 (2004), citing Bernard v. Nantucket Boys’ Club, 391 Mass. 823, 827 (1984). This rule “may render it more difficult 11 imply [an] easement by reservation for grantor’s benefit than easement by grant for grantee’s benefit.” Harrington v. Lamarque, 42 Mass.App.Ct. 371, 375-76 (1997), quoting Dale v. Bedal, 305 Mass. 102, 103 (1940).
Here, the evidence in the record leads this court to conclude no implied easement exists. While the January 31, 2001 deed contains specific language providing for an easement for a right of way, it is silent with regard to the septic system. This is significant because “the creation of such express easements in the deeds [negates] . . . any intention to create easements by implication.” Joyce, 322 Mass, at 549. See also Zotos, 63 Mass.App.Ct. at 657-58 (holding express easement in deed significantly negated any presumed intention by the parties to create an implied easement).
Moreover, Quirk’s own statements lend insight to the presumed intent of the parties. Quirk stated he did not give consideration to the location of the septic system at the time of the conveyance because he did not know where the septic system was. (Glick’s Motion for Summary Judgment, ex. 23, Quirk’s Complaint, par. 12; ex. 24, Quirk’s affidavit, par. 8.) That Quirk did not give consideration to where the septic system was at the time of the re-conveyance cuts against a presumption the parties intended to create such an easement. This conclusion is buttressed by the fact that Quirk sent Glick a letter on August 16, 2006, asking Glick to grant Quirk an easement over the septic system. This letter leads to an inference that neither party believed an easement was created at the time of the conveyance, prompting Quirk to ask for an easement five years later.
Quirk, as grantor of the sheep meadow, can also be charged with knowing the location of the septic system before he conveyed the parcel. Quirk has pointed to nothing, other than his contention Glick was supposed to provide him with the location of the septic system in 1999, that would have prevented him from locating the septic system prior to the re-conveyance to Glick.[3] Quirk cannot now use his lack of due diligence to argue he did not know where the septic system was when he granted the sheep meadow.[4] Cf. Dale, 305 Mass. at 104 (“[i]mplied terms cannot be imported into a conveyance . . . because of material facts relating to the condition of the premises known to one of the parties which the other party does not know, which he is under no obligation to know, and which he has no means of ascertaining”).
Quirk has also not shown the easement is reasonably necessary. Quirk argues the capping and sealing of the septic system will cause the Board of Health to condemn the boarding house and the tenants to vacate the premises. He has not, however, pointed to any reasons why he could not put a septic system on Lot 1 A, or why he could not tie in to the town sewer system. Even should this court assume Quirk is adverse to the costs necessary to undertake either procedure, Quirk has not shown the costs associated with remedying the situation are so high that they make an easement necessary. Without more, Quirk has not shown the *223 requisite necessity. See Oldfield v. Smith, 304 Mass. 590, 594 (1939) (holding easement not necessary where water pipes could be conveniently laid, at plaintiffs expense, in another area). See also Boudreau, 29 Mass.App.Ct. at 630 (holding no implied easement due to, in part, plaintiffs failure to show reasonable necessity for easement).
The foregoing evidence in the record leads this court to conclude the presumption is that the parties did not intend to create an easement with respect to the septic system. Convenience, without more, will not create an easement in Quirk’s favor. Harvey Corp. v. Bloomfield, 320 Mass. 326, 329 (1946). Therefore, Glick’s Motion for Summaiy Judgment denying Quirk’s claim for an implied easement is hereby ALLOWED and Quirk’s claim as to an implied easement is DENIED.
B.Misrepresentation and Negligent Misrepresentation
Quirk also brings claims against Glick for misrepresentation and negligent misrepresentation. Quirk alleges Glick falsely told him at the time of the initial conveyance Glick would provide him with details with respect to the septic system and that he relied on Glick’s statements and entered into the agreement. Quirk also alleges Glick failed to provide the details and Glick’s failure to provide these details caused injury.
In order to establish a claim for fraudulent misrepresentation, the plaintiff must establish the defendant “made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage.” Russell v. Cooley Dickinson Hosp., 437 Mass. 443, 458 (2002), quoting Danca v. Taunton Sav. Bank, 385 Mass. 1, 8 (1982). Likewise, in order to make out a claim for negligent misrepresentation in the course of business, a plaintiff must show the defendant supplied false information. Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 59 n.25 (2004).[5]
Here, contrary to Quirk’s claims, the evidence in the record shows Glick did not falsely represent he would provide Quirk with details of the septic system. On September 28, 1999, Glick had an engineer licensed by the Massachusetts Department of Environmental Protection inspect the septic system. (Glick’s Motion for Summaiy Judgment, ex. 4.) Glick faxed a copy of the report to Quirk on October 12, 1999. [Id.) While Quirk vigorously contends he never received this report, his receipt of the report, at least as to this claim, is irrelevant to his claim of misrepresentation and negligent misrepresentation. What is relevant is the evidence that Glick attempted to provide details of the septic system. There is no evidence Glick made the statement falsely; indeed he had the survey done and provided (or at least attempted to provide) the details to Quirk. Because the necessary element of a false statement is missing, Quirk’s claim on this ground must fail. See generally Nei v. Boston Survey Consultants, Inc., 388 Mass. 320, 322, 323 (1983) (holding plaintiff failed to make out claim for fraud where they did not show the defendant made false statements). As a result, Glick’s Motion for Summaiy Judgment as to Quirk’s claims for misrepresentation and negligent misrepresentation is ALLOWED.
C.Breach of Contract
Quirk also alleges Glick’s failure to provide information with regard to the septic system constituted a breach of the purchase and sale agreement.[6] Pursuant to G.L.c. 260, §2, a claim for breach of contract may “be commenced only within six years next after the cause of action accrues.” Under Massachusetts law, the action accrues at the time the contract is breached. Barber v. Fox, 36 Mass.App.Ct. 525, 527 (1994). Quirk appears to argue in his Opposition Glick was supposed to provide details of the septic system by the time of the conveyance. As the conveyance took place on January 31, 2001, this appears to be, according to Quirk, the point of breach. Quirk, however, did not file this complaint until October 26, 2007, well past the six-year window in which to file a breach of contract claim.[7] Quirk’s breach of contract claim must, therefore, be dismissed. As a result, Glick’s Motion for Summaiy Judgment is ALLOWED.
D.G.L.c. 93A
Quirk also claims Glick’s misrepresentations and failure to recognize his claim of an easement with respect to the septic system constituted unfair and deceptive trade practices in violation of G.L.c. 93A. As discussed above, however, Glick did not, as a matter of law, make any misrepresentations, and Quirk did not have an implied easement to continued use of the septic system. Therefore, Quirk’s claim for violation of G.L.c. 93A must fail. As a result, Glick’s Motion for Summaiy Judgment as to this claim is ALLOWED. ■
III. Glick’s Claim
Glick filed a counterclaim alleging Quirk trespassed upon his properly. Glick argues should this court find no easement exists then Quirk should be held as a trespasser as a matter of law. In order to sustain an action for trespass, Glick must prove two elements: (1) that he had actual possession of the properly and (2) that Quirk’s entiy was intentional and illegal. New England Box Co. v. C&R Constr. Co., 313 Mass. 697, 707 (1943). Intentional, illegal entry is accomplished by a voluntaiy act of entiy without right or license. Edgarton v. H.P. Welch Co., 321 Mass. 603, 612-13 (1947).
Here, it is undisputed Glick actually possesses the sheep meadow. Moreover, as discussed above, Quirk did not have an easement to use the septic system by implication. Because he did not have a right by easement, or otherwise, to use the septic system, he did not have a legal right to be on Glick’s land. Thus, *224 Quirk’s use of the septic system constituted a trespass.[8] See Ward v. McGlory, 358 Mass. 322, 326 (1970) (holding defendant’s act of putting up and maintaining electric poles constituted trespass where no express or implied easement existed to do so). There remains, however, a genuine issue as to the amount of damages, if any, caused by Quirk’s use of the septic system to be determined by a finder of fact. Consequently, with respect to Quirk’s liability as a trespassor, Glick’s Motion for Summary Judgment is ALLOWED and Quirk’s Cross Motion for Summary Judgment is DENIED.
ORDER
It is hereby ORDERED Glick’s Motion for Summary Judgment be ALLOWED and Quirk’s Cross Motion for Summary Judgment be DENIED. This court DECLARES Quirk does not have an implied easement with respect to the septic system on the sheep meadow. A damages assessment hearing shall be set to determine the amount of damages for Glick’s trespass claim.

 Glick contends he informed Quirk of the septic system as early as December 7, 2000, when the parties entered into the Settlement Agreement. He also alleges he told Quirk he would have to remove the septic system from the sheep meadow and Quirk could have a reasonable amount of time to remove it. Glick also contends he thereafter made numerous phone calls and sent numerous letters to Quirk telling Quirk he needed to remove the septic system from the sheep meadow and asking him when he would do so.

 Quirk’s argument is made even more untenable by the fact he was an experienced real estate developer who previously dealt with septic system issues and procedure on past real estate projects. (Glick Motion for Summary Judgment, ex. 7, par. 4.)

 Quirk contends he did not know where the septic system was located at the time he re-conveyed the Sheep Meadow to Glick because he was waiting for Glick to give him the location as Glick had promised to do in 1999 at the time of the original conveyance.

 In addition to showing the defendant supplied false information, a plaintiff claiming negligent misrepresentation must show the information provided was for the guidance of others in their business transactions, causing and resulting in pecuniary loss to others by their justifiable reliance on the information, with failure to exercise reasonable care or competence in obtaining or communicating the information. Marram, 442 Mass. at 59 n.25.

 Quirk argues in his Opposition to Glick’s Motion for Summary Judgment Glick breached the 2000 purchase and sale agreement to convey the sheep meadow. (Quirk Opposition, p. 13.) In Count IV of his complaint alleging breach of contract, however, Quirk references the initial sale “of Eastleigh Farm to Quirk,” as the operable agreement from which the breach of contract springs. Quirk also alleges in his Opposition there was no Purchase and Sale agreement for the 2000 transfer of land from Quirk to Glick. Attached as exhibit 9 to Glick’s Motion for Summary Judgment, however, is a signed document entitled “Standard Form Purchase and Sale Agreement" for the transfer of the parcel of property known as the “sheep meadow.” This document is dated December 7, 2000 (the same day the Settlement Agreement was executed), and is signed by both Quirk and Glick. In any event, and without deciding the issue on the basis of what effect any merger clause may have, for the reasons discussed above, Quirk’s claim on this ground is dismissed.

 At the hearing held in this court on Glick’s Motion for Summary Judgment, Quirk argued for the first time a new theory underpinning his claim for breach of contract. At that hearing, Quirk contended Glick breached the agreement with respect to the implied easement in 2005 when Glick first told Quirk he wanted him to remove the septic system from the sheep meadow. This argument relies on the existence of an implied easement, which, as discussed above, did not exist. Therefore, Quirk’s argument on this ground falls.

 Qulrk argues In opposition he cannot be liable for trespass because Glick cannot show Quirk entered onto his land; the septic system was there when Glick took the sheep meadow and he cannot now argue Quirk has a duty to remove the septic system. Quirk’s argument, however, misses the point. The trespass lays in Quirk’s use of the septic lines that flow on Glick’s property.