Raymond C. Southwick, trustee,[1] *vs.* Planning Board of Plymouth & others.[2]

No. 05-P-384.

Plymouth. November 14, 2005. - December 20, 2005.

Present: Lenk, Dreben, & Green, JJ.

*Subdivision Control,* Access ways, Approval of plan.

In a civil action challenging a town planning board's approval of a proposed subdivision, the plaintiff, the owner of property comprising part of an adjacent subdivision, had standing to claim, and established, that the proposed subdivision was without a right of access (on which it depended to reach a public way) over roads serving the adjacent subdivision; therefore, because the proposed subdivision rested on a flawed essential premise, this court reversed the judgment dismissing the plaintiff's complaint and ordered the entry of a new judgment annulling the planning board's approval of the proposed subdivision. [318-320]

Civil action commenced in the Superior Court Department on August 3, 2001.

The case was heard by *Paul E. Troy,* J., on motions for summary judgment.

*Michael S. Mehrmann* for the plaintiff.

*Richard M. Serkey* for the defendants.

Green, J. The questions in this subdivision appeal are (i) whether the plaintiff's claim that the subdivision parcel has no right of access over the roads serving an adjacent subdivision (of which the plaintiff's land is a part) is sufficient to support his standing to maintain the appeal; and (ii) whether his claim requires annulment of defendant Plymouth planning

---

[1] Of the TGS Realty Investment Trust.

[2] Loring Tripp, III, Nicolas Filla, Malcolm MacGregor, Larry Rosenblum, Rebecca Hall, and Paul McAldoff, as they are members of the planning board of Plymouth; town of Plymouth; Jonathan Wildes; and Second Church of Plymouth.

board's (board) approval of that subdivision. We conclude that the plaintiff's claim is not merely sufficient to support his standing, but establishes that the subdivision is without the right of access on which it depends. We accordingly reverse the summary judgment dismissing the plaintiff's complaint, and direct entry of judgment in the plaintiff's favor, annulling the subdivision approval.[3]

*Background*.[4] In 1987, the board approved a definitive plan of subdivision for Shallow Pond Estates (Shallow Pond subdivision). Among other conditions imposed on the subdivision approval was a requirement that the project proponent convey to the town of Plymouth, for nominal consideration, a certain lot in the subdivision described as lot 7-E1.[5] The subdivision proponent (a predecessor in interest to the plaintiff) conveyed lot 7-E1 to the town in 1988, under a deed which included the following language:

"The Grantor also grants, gives, bargains, and conveys, to the said Grantee an easement and right of way to use the roads and ways in the subdivision as shown on [the Shallow Pond subdivision] Plan for all purposes for which public ways and roads may be lawfully used in the Town of Plymouth in common with others lawfully entitled thereto. The Grantor specifically reserves to itself and to its successors and assigns the easement and right of way to use such roads and ways as shown on [the subdivision] Plan for all purposes for which public ways and roads may be lawfully used in the Town of Plymouth in common

---

[3]Because we conclude that the plaintiff has standing to assert his claim that the subdivision roadways may not be used to provide access to the Wildes parcel, we need not discuss the parties' other arguments directed to the question of his standing. Similarly, because we conclude that the subdivision approval must be annulled, we do not reach the parties' arguments concerning the appropriateness of certain waivers granted by the board incident to its approval of the subdivision.

[4]The sketch plan attached as an appendix to this opinion illustrates the relationships between the parcels and roadways material to our discussion.

[5]The approval also required conveyance of another lot, described as lot 7-122, but its status does not bear on the issues in the present case. The Shallow Pond subdivision approval was not appealed, and no party asserts any issue in the present matter concerning the imposition of a condition requiring conveyance to the town of a portion of the subdivision land. But see G. L. c. 41, § 81Q.

with others lawfully entitled thereto, as well as the right to grant such easement and rights to others."[6]

Following a foreclosure, the plaintiff acquired the Shallow Pond subdivision from the Federal Deposit Insurance Corporation by deed in 1995, and since has conveyed all but two lots in the subdivision to other parties.[7] The Shallow Pond subdivision roadways remain private, and (pursuant to G. L. c. 183, § 58, the so-called "derelict fee statute") the owner of each lot owns the fee to the centerline of the roadway adjacent to such lot.[8] Accordingly, the plaintiff owns the fee in the portion of Shallow Pond Lane abutting lot 7-192.

At its northeasternmost extension, lot 7-E1 abuts the roadway in the Shallow Pond subdivision known as Shallow Pond Lane. As the lot extends southward from Shallow Pond Lane, it is eventually bounded to the east by the land that is the subject of the subdivision at issue in the present case. That land (the Wildes parcel) is currently owned by defendant Jonathan Wildes, and was previously owned by defendant Second Church of Plymouth (church). The Wildes parcel was not a part of the land included within the Shallow Pond subdivision, and it does not abut Shallow Pond Lane or any other roadway within that subdivision. It likewise has no deeded right of access to or from any other roadway outside the subdivision; the parcel is landlocked.[9]

In 1992, while the Shallow Pond subdivision was still owned by its original developer, the church requested on at least three occasions that the developer grant it an easement for access

[6]It is apparent from the minutes of the hearing before the board that the purpose of the easement was to furnish public access to Shallow Pond over lot 7-E1, which comprised a significant portion of its shorefront.

[7]The two lots retained by the plaintiff are shown as lots 7-188 and 7-192 on Plymouth assessors map 73. Lot 7-188 is quite distant from, and abuts no roadway furnishing access to, the proposed new subdivision; the plaintiff presses no claim of standing based on that lot. Lot 7-192, shown on the attached sketch, abuts Shallow Pond Lane.

[8]The plaintiff alleged in his complaint, and argued in the Superior Court, that he had reserved the fee in the subdivision roadways from his conveyances of lots to third parties, but he has abandoned that argument on appeal.

[9]Wildes has presented no evidence or argument to suggest that the Wildes parcel might enjoy an easement by implication or necessity over the Shallow Pond subdivision roadways.

over the Shallow Pond subdivision roadways. However, no such grant occurred.

In 2000, Wildes entered into an agreement to buy the Wildes parcel, conditioned on his ability to obtain approval of a subdivision of the parcel, and to acquire from the town of Plymouth an easement for access to the parcel over lot 7-E1. In 2000, the Plymouth town meeting approved the grant of an easement over lot 7-E1. In 2001, the board approved the definitive subdivision plan of the Wildes parcel, and the plaintiff appealed the board's approval to the Superior Court. Despite the appeal, Wildes purchased the Wildes parcel from the church. Upon the parties' cross motions for summary judgment, a judge of the Superior Court entered judgment dismissing the complaint, based on his conclusion that the impact of increased traffic from the proposed two-lot subdivision, coupled with the plaintiff's ownership of only the portion of Shallow Pond Lane abutting the plaintiff's lot 7-192, was insufficient to support the plaintiff's standing to appeal.

*Discussion.* Though the immediate access to the Wildes parcel is over lot 7-E1 (by means of the easement approved by the town), the parties acknowledge that access to the proposed subdivision relies in addition on the roadways in the Shallow Pond subdivision or, more particularly, Shallow Pond Lane and Kathleen Drive. The plaintiff contends that the Shallow Pond subdivision roadways may not be used to furnish access to the Wildes parcel; Wildes contends that such use is permissibly within the scope of the easement rights granted to the town incident to the conveyance of lot 7-E1.

The case is governed in all material respects by the rule described in *Murphy* v. *Mart Realty of Brockton, Inc.*, 348 Mass. 675, 678-679 (1965): "[a] right of way appurtenant to the land conveyed cannot be used by the owner of the dominant tenement to pass to or from other land adjacent to or beyond that to which the easement is appurtenant." For a recent application of the rule, see *McLaughlin* v. *Selectmen of Amherst*, 422 Mass. 359, 364-365 (1996).[10]

Wildes argues, without reference to any authority, that the

---

[10]Wildes makes no argument that the easement over the Shallow Pond subdivision roadways conveyed to the town in the 1988 deed, which conveyed

town's extension of its easement over the Shallow Pond subdivision roadways to serve the Wildes parcel is not governed by the general rule because the town is a public entity, rather than a private owner as in *Murphy*, *McLaughlin*, and other like cases. Accordingly, the easement conveyed to the town under the 1988 deed of lot 7-E1 as appurtenant to that lot may be used by any resident of the town to gain access to the town land and, most likely, Shallow Pond itself.[11] As Wildes sees it, it is nonsensical to suggest that an easement held for the benefit of every resident of the town could be overburdened by extending its use for the benefit of two additional lots. The argument is inapposite, as it conflates the question of overburdening an easement by frequency, type or intensity of use, see, e.g., *Boudreau* v. *Coleman*, 29 Mass. App. Ct. 621, 634 (1990), with the question of which land may enjoy the benefit of an appurtenant easement.[12]

Because the easement held by the town over the Shallow Pond subdivision roadways is appurtenant to the town's ownership of lot 7-E1, and because the Wildes parcel enjoys no easement over the roadways as appurtenant to it, use of the roadways to furnish access to the Wildes parcel would overload the town's appurtenant easement over the roadways. Because the plaintiff owns the fee in a portion of Shallow Pond Lane, he is among

---

lot 7-E1, is anything but an easement appurtenant to that lot, and there would appear to be little basis to conclude otherwise. "An easement is not presumed to be personal unless it cannot be construed fairly as appurtenant to some estate." *Jones* v. *Stevens*, 276 Mass. 318, 323 (1931), quoting from *Willets* v. *Langhaar*, 212 Mass. 573, 575 (1912).

[11]See note 6, *supra.*

[12]The term "overburden" is occasionally used to describe any use that exceeds the scope of rights held under an easement. See e.g., *McLaughlin* v. *Selectmen of Amherst, supra* at 364; *Boudreau* v. *Coleman, supra.* In *Murphy* v. *Mart Realty of Brockton, Inc., supra* at 679, the court said that the use of an easement to serve land other than the dominant estate to which the easement is appurtenant "overloaded" the easement. Some commentators have used "overburden" to describe only use of an easement for a purpose different from that intended in the creation of the easement, "overload" to describe the situation (as in the present case) where an appurtenant easement is used to serve land other than the land to which it is appurtenant, and "nuisance" to refer to overly frequent or intensive use. See Lombardi, Bailin, Hovey, & Pill, Massachusetts Easements and Land Use Restrictions III-12 (Professional Education Systems Institute 2003). We express no view on such distinctions in terminology as a general matter, but observe that the distinction in concepts illustrates the flaw in Wildes's argument.

those entitled to assert the claim that such use would overload the easement over his servient estate, and therefore among those entitled to appeal the board's approval of the proposed subdivision.[13] See G. L. c. 41, § 81BB (authorizing appeal of planning board decision by persons aggrieved); *Rattner* v. *Planning Bd. of West Tisbury*, 45 Mass. App. Ct. 8, 10 (1998) ("A plaintiff is an aggrieved person if he suffers some infringement of his legal rights"). Because the proposed subdivision of the Wildes parcel relies on access over the Shallow Pond subdivision roadways as its sole means of access to a public way, it rests on a flawed essential premise and must be annulled. See *Parker* v. *Black Brook Realty Corp.*, 61 Mass. App. Ct. 308, 310-311 (2004). See generally *North Landers Corp.* v. *Planning Bd. of Falmouth*, 382 Mass. 432, 436-437 (1981).[14] The judgment dismissing the complaint is reversed, and a new judgment shall enter annulling the board's decision approving the subdivision.

*So ordered.*

---

[13]The Shallow Pond subdivision roadways connect that subdivision to State highway 3A. The shortest and most direct route from the public highway to lot 7E1 is past the plaintiff's property. However, Shallow Pond Lane and Kathleen Drive create a loop within the subdivision, and it is also possible to reach lot 7E1 without passing the plaintiff's land. The ground on which our decision rests nonetheless applies generally to all of the roadways in the Shallow Pond subdivision. That is to say, Wildes has demonstrated no legal right to use any portion of the Shallow Pond subdivision roadways for access to the Wildes parcel (and the lots he proposes to create by the proposed subdivision).

[14]Because Wildes has demonstrated no legal right of access to his land, there appears at the present time to be no basis on which the planning board might appropriately approve his proposed subdivision. The situation could change, of course, were he to acquire an easement for the benefit of the Wildes parcel over the Shallow Pond subdivision roadways from the owners thereof or, alternatively, should the Shallow Pond subdivision roadways be accepted by the Plymouth Town Meeting as public ways, and the necessary rights therein be acquired by the town. See G. L. c. 82, §§ 21-24, as affected by G. L. c. 41, § 81Y.