KUBIC vs. AUDETTE, MISC 13-480929

































 
 VINCE KUBIC and PAUL KUBIK, Plaintiffs, v. DAVID AUDETTE, Defendant
 MISC 13-480929 
 JULY 16, 2021
WORCESTER, ss.
ROBERTS, J.
MEMORANDUM OF DECISION AND ORDER ON REMAND














 INTRODUCTION 





 This matter is before the court on remand from the Appeals Court after its decision in Kubic v. Audette, 98 Mass. App. Ct. 289 (2020) ("Kubic"). In that decision, the Appeals Court concluded (1) that the plaintiffs, Vince Kubic and Paul Kubik (together, "Plaintiffs" and individually, "Vince" and "Paul," respectively), not defendant David Audette ("Audette"), [Note 1] own the fee in the right of way ("ROW") running between Plaintiffs' lots to the shore of Webster Lake; (2) that the ROW, and Plaintiffs' ownership interests therein, extends to the presently existing water line of Webster Lake; and (3) that, while Audette has an easement to cross the ROW ("the Easement"), that easement does not include the right to park thereon or to occupy it, e.g., by holding social events, maintaining a picnic table or storing a dock in the off season thereon. See Kubic, 98 Mass. App. Ct. at 302-305. The Appeals Court remanded the matter to this court to determine whether Audette's placement and use of a dock located at the end of the ROW and extending into Webster Lake constitutes an overburdening of the Easement, in particular by creating a physical barrier to the lake in the form of the dock and by virtue of what the Appeals Court described as "acts of intimidation" by Audette. Id. at 305. As the Appeals Court noted, this court (Cutler, J.) had not previously made findings about the extent of Audette's "interference" or what remedy would be appropriate. Id. 





 On March 12, 2021, Plaintiffs filed their Post-Trial Brief On Remand From The Appeals Court On The Defendant's Dock ("Plaintiffs' Brief"). Audette filed Defendant David Audette's Post-Trial Brief On Remand From The Appeals Court ("Defendant's Brief") on April 12, 2021, to which Plaintiffs filed a reply on April 26, 2021. A hearing on the issue of overburdening was held on May 5, 2021. After the hearing, the court provided counsel with the opportunity to provide further case citations in support of their respective positions. 





 As further set forth below, this court determines that Audette's use of the ROW to access a dock on Webster Lake overburdens the Easement. Accordingly, a permanent injunction will issue in this matter preventing Audette and his successors from using the ROW for that purpose. 





FACTS 





 In a status conference held on January 12, 2021, counsel for both parties reported to the court that the issue of overburdening could be addressed on the existing record. The Statement Of Relevant Facts From The Trial Record, set forth in Plaintiffs' Brief with citations to the trial record and largely adopted by Audette, see Defendant's Brief at 2, as supplemented by the trial record and the Appeals Court's decision, establishes the following facts: 





The Parties 





 Vince resides at and owns property at 4 Fairfield Street, Webster, Massachusetts. Plaintiffs' Brief at 2. Paul resides at and owns property at 6 Fairfield Street, Webster, Massachusetts. Plaintiffs' Brief at 3. Audette resides at and owns property at 17 Fairfield Street, Webster, Massachusetts. Plaintiffs' Brief at 3. 





Relevant Title History 





 Webster Lake, located in Webster, Massachusetts, is a great pond. Plaintiffs' Brief at 4. In July 1946, Arthur and Doriza Robinson (collectively, the "Robinsons") took title, as tenants by the entirety, to a large tract of land on the northeasterly shore of Webster Lake by deed from Hector and Albina Patenaude, which deed is recorded at Book 3012, Page 377 of the Worcester Registry of Deeds ("the Registry"). Plaintiffs' Brief at 3. The Robinsons then subdivided that property, with the resulting lot configuration being shown on a plan entitled "Plan of Lots owned by Arthur & Doriza L. Robinson Webster Mass. Scale 1"- 60' Sept 11 1948 J.R. Kleindienst Eng." ("the 1948 Plan") and recorded in the Registry at Plan Book 191, Page 16. Plaintiffs' Brief at 3. The 1948 Plan depicts a 30-lot subdivision and lays out the ROW, an approximately 50-foot-wide and 100-foot-long parcel located between Lots 14 to the south and 15 to the north, running from an unnamed road to the shore of Webster Lake. Trial Exhibit ("T.E.") 3. Lots 1 through 16 as shown on the 1948 Plan all have frontage on Webster Lake; the remaining fourteen lots shown on the 1948 Plan do not. T.E. 3. 





 After the subdivision's creation, the Robinsons conveyed out the lots shown on the 1948 Plan. Plaintiffs' Brief at 4. None of the source deeds from the Robinsons include an express reservation or exclusion of the fee interest in the ways shown on the 1948 Plan or the ROW. Plaintiffs' Brief at 4. Twelve of the eighteen deeds out from the Robinsons are silent with respect to the grant of any rights over the ways shown on the 1948 Plan or over the ROW. Plaintiffs' Brief at 4.





 Between 1948 and 1952, the Robinsons effected six conveyances that omitted any reference to rights of passage. See T.E. 4 (September 23, 1948 deed of Lot 16); T.E. 5 (September 23, 1948 deed of Lots 17 and 18); T.E. 6 (September 23, 1948 deed of Lot 15); T.E. 7 (September 23, 1948 deed of Lot 1); T.E. 8 (September 24, 1951 deed of Lots 4 through 6); T.E. 9 (September 24, 1951 deed of Lots 2 and 3). These last three deeds, of Lots 1, 4 through 6, and 2 and 3, all included a set of restrictions "for the benefit of these lots and lots 1 to 13 inclusive and lots 21 to 30 inclusive." [Note 2] Then, in 1952, the Robinsons conveyed Lots 7 through 10, all on Webster Lake, "[t]ogether with a right of way from Killdeer Road fifty (50) feet in width to the above described premises as shown on said Plan." T.E. 10; Plaintiffs' Brief at 4-5. In 1953, the Robinsons conveyed Lot 25 and a portion of Lot 24, a conveyance that included, for the first time, an express easement over the ROW: "[t]ogether with water right over that parcel of land shown as right of way on said plan." T.E. 11; Plaintiffs' Brief at 5. In June 1954, the Robinsons conveyed Lot 23 and the remainder of Lot 24, which conveyance did not include any express easement. Plaintiffs' Brief at 5. 





 By deed dated November 5, 1954 and recorded in the Registry at Book 3635, Page 90, the Robinsons conveyed a "triangular shaped tract containing 10,412 square feet, more less; and partially or completely submerged below the surface of said Webster Lake" adjacent to Lot 15 on the 1948 Plan to Vince's father and predecessor in title, Vincent F. Kubic. T.E 35; Plaintiffs' Brief at 5. The deed included an express easement: "[t]ogether with a right of way over existing ways as shown on said Plan to said Lot #15 and to the triangular tract herein conveyed." T.E. 35; Plaintiffs' Brief at 5. The following year, by deed dated August 13, 1955 and recorded in the Registry at Book 3707, Page 594, the Robinsons conveyed Lot 19 to Vincent F. Kubic, which deed included an express easement: "[t]ogether with a right of way over existing ways as shown on said plan from Killdeer Road." T.E. 12; Plaintiffs' Brief at 5. 





 By deed dated October 1, 1957 and recorded in the Registry at Book 3907, Page 536, the Robinsons conveyed a portion of Lot 14 to Joseph P. and Rose M. Kubik, Paul's predecessors in title, which deed included the following easement: "[t]ogether with a Right of Way over existing Ways as shown on said Plan to the Granted Premises, excepting that no Right of Way is conveyed herein over any land located Northerly of the last course above described." T.E. 13; Plaintiffs' Brief at 5-6. 





 The final seven conveyances were made by the Robinsons between 1960 and 1966. Plaintiffs' Brief at 6. Five of those conveyances, involving portions of Lot 12 and Lot 13, Lots 21 and 22, a portion of Lot 26, Lot 20, and Lot 11, respectively, did not include express easement rights. Plaintiffs' Brief at 6. In November 1962, the Robinsons conveyed the remainders of Lots 13 and 14 along with the following easement: "[g]ranting herein a right of way from Fairfield Street to the said Webster Lake over Lot # 11 and excluding any right of way set forth on said Plan between Lot # 14 and Lot # 15." T.E. 19; Plaintiffs' Brief at 6. Finally, in June 1966, the Robinsons conveyed Lots 27 through 30 along with the Easement, expressed as: "a right of way to Webster Lake located northerly of Lot # 14 as shown on aforesaid plan." T.E. 20; Plaintiffs' Brief at 6. Audette is the current owner of Lots 29 and 30 by deed dated August 3, 2006 and recorded with the Registry at Book 39587, Page 154. T.E. 24. 





 Vince and Paul own the fee in the ROW to the shore of Webster Lake. Kubic, 98 Mass. App. Ct. at 302. The ROW, and Plaintiffs' ownership interest therein, extends to the presently existing water line of Webster Lake. Id. 





History of Docks within the ROW 





 From the late 1960s to the 1970s, some twenty years after the original deed out of Lot 15, Vince's family maintained a dock ("the Kubic Dock") at the end of the ROW for approximately ten years. Plaintiffs' Brief at 6. The Kubic dock was 15 feet long, four feet wide and located in the southerly half of the ROW. Plaintiffs' Brief at 7. The Kubic family kept a single boat moored to the Kubic Dock and would otherwise use the dock to "go out fishing and swimming and stuff like that." Plaintiffs' Brief at 7. 





 The Haley family, owners of the property at 26 Killdeer Island Road, or Lot 25 on the 1948 Plan, maintained a dock ("the Haley Dock") in the middle of the ROW as it abuts Webster Lake for roughly 15 to 20 years, from the early to mid-1960s through the early 1980s, Plaintiffs' Brief at 7, which was some ten to fifteen years after the original deed out of Lot 25. T.E. 11. The Haley Dock was 15 feet long and three to four feet wide. Plaintiffs' Brief at 7. The Haley family moored their motorboat to the dock and the Kubic children would "go and fish off the Haleys' [sic] wharf on the right of way." Plaintiffs' Brief at 7. 





Audette's Dock 





 In 2012, Audette received a G. L. c. 91 waterways license from the Massachusetts Department of Environmental Protection to install a dock at the end of the ROW, which license was recorded in the Registry on June 26, 2012 at Book 49201, Page 46 ("the G. L. c. 91 License"). Plaintiffs' Brief at 7. The G. L. c. 91 License was granted based on an application misrepresenting that Audette was the owner of the land from which the dock extended. Kubic, 98 Mass. App. Ct. at 304. 





 Audette installed his dock in early April 2013. Plaintiffs' Brief at 7. Audette's dock is a trident-shaped structure comprised of three floats, measuring 35 feet in width at its widest point and 84 feet in length. Plaintiffs' Brief at 7. Between 8.5 and 10 feet of the dock is located within the boundaries of the ROW, with the balance extending into Webster Lake. Plaintiffs' Brief at 8; Defendant's Brief at 3. The part of the dock located in the ROW is four feet wide and is the beginning of an approximately 40-foot long walkway which leads to a three-pronged set of floats that allow for the mooring of two boats. Plaintiffs' Brief at 8; Defendant's Brief at 6. 





 Since 2013, Audette has tied his motorboat to the dock every summer, and every summer since 2015, Audette has allowed Paul J. Marchese to tie his motorboat to the dock. Plaintiffs' Brief at 8. Audette uses the ROW to access the balance of his dock located below the waterline and his motorboat. Plaintiffs' Brief at 8. 





DISCUSSION 





 At the close of its decision in Kubic, the Appeals Court stated that "[t]he remaining issues have to do with Audette's placement and use of his dock. We recognize that only a small portion of the dock lies within the ROW; most of it is moored over submerged land owned by the Commonwealth. ... [T]he question remains whether the placement and use of the dock is overburdening the easement." Kubic, 98 Mass. App. Ct. at 304. As the Appeals Court has already determined that the Easement does not include "the right to occupy the area without the Kubics' permission," id., no portion of the dock is permitted within its boundaries. [Note 3] The remaining question for this court is whether Audette's use of the Easement to access a dock on other property falls within the scope of the Easement because, if not, it constitutes an overburdening. 





 As a threshold matter, it bears noting that the party asserting an easement--here, Audette--carries the burden of proof on that issue. Boudreau v. Coleman, 29 Mass. App. Ct. 621 , 629 (1990) ("The parties asserting the easement ... have the burden of proving its existence."), citing Mt. Holyoke Realty Corp. v. Holyoke Realty Corp., 284 Mass. 100 , 105 (1933); Krinsky v. Hoffman, 326 Mass. 683 , 688 (1951); Rahilly v. Addison, 350 Mass. 660 , 663- 664 (1966). Also, any ambiguity concerning the scope of an easement is "resolved in favor of freedom of the land from servitude." Butler v. Haley Greystone Corp., 352 Mass. 252 , 258 (1967). 





 With those core tenets in mind, the starting point of the analysis is the language of the Easement. 





 "The basic principle governing the interpretation of deeds is that their meaning, derived from the presumed intent of the grantor, is to be ascertained from the words used in the written instrument, construed when necessary in light of the attendant circumstances." It follows that the same considerations govern our interpretation of an easement created by deed. 





Patterson v. Paul, 448 Mass. 658 , 665 (2007), quoting Sheftel v. Lebel, 44 Mass. App. Ct. 175 , 179 (1998) (internal citations omitted). "[W]ith respect to an easement created by a conveyance, 'the extent of [the] easement ... is fixed by the conveyance,' and the 'language [used] ... is the primary source for the ascertainment of the meaning of [the] conveyance.'" Sheftel, 44 Mass. App Ct. at 179 (citations omitted). When "the language of the easement is 'clear and explicit, and without ambiguity, there is no room for construction, or for the admission of parol evidence, to prove that the parties intended something different.'" Westchester Assocs. v. Boston Edison Co., 47 Mass. App. Ct. 133 , 136 (1999), quoting Panikowski v. Giroux, 272 Mass. 580 , 583 (1930). 





 Here, the language creating the easement set forth in the June 29, 1966 deed to Audette's predecessor in title states: "Together with right of way to Webster Lake located northerly of Lot #14 as shown on aforesaid plan." If the Easement granted a right of way "to Webster Lake and any dock located thereon" or words of similar import, there would be no doubt as to Audette's right to use the ROW to access his dock. That is not the case here. 





 Accordingly, the circumstances attendant to the creation of the grant must next be considered. Certain facts are germane to that analysis. The subdivision of which the parties' properties are all a part was created in 1948. The subdivision created thirty lots, sixteen of which have frontage on Webster Lake and fourteen of which do not have such frontage. Of those lots without frontage, five lots and a portion of a sixth lot (Lot 25 and a portion of Lot 24, first conveyed out in 1953 and Lots 27 through 30, first conveyed out in 1966) have the express grants described above. The owners of the remaining lots, who are not parties to this litigation, may or may not have rights over the ROW to access Webster Lake. See Hickey v. Pathways Ass'n, Inc., 472 Mass. 735 , 762 (2015) (finding right of access to Cape Cod Bay over way "[b]ased on the clear intent of the original developers, as indicated in the interrelationship of the subdivision plans, the pattern of conveyance, the deeds and certificates of title expressly granting access to all ways in the Land Court case or to all ways on a plan"); Leahy v. Graveline, 82 Mass. App. Ct. 144 , 148-149 (2012) (beach rights of back lot owners based on deeds, plans, and contemporaneous advertisements). So, at a minimum, the owners of five (and a portion of a sixth) lots have rights over the ROW and, at a maximum, the owners of fourteen lots have such rights. In addition, at the time that the 1948 Plan was prepared, it was long established that "title to both the land under a great pond and the waters in the pond are held by the Commonwealth for the benefit of the public," Kubic, 98 Mass. App. Ct. at 298, and that "fishing, swimming, boating and other uses ... are reserved for the public in great ponds." Id. at 303, citing Watuppa Reservoir Co. v. Fall River, 147 Mass. 548 , 558 (1888), which in turn quotes Fay v. Salem & Danvers Aqueduct, 111 Mass. 27 (1872) ("'great ponds are public property, the use of which for taking water or ice, as well as for fishing, fowling, bathing, boating, or skating, may be regulated or granted by the Legislature in its discretion.'"). Notably, all those uses are transient. 





 Based on the circumstances existing at the time of the creation of the Easement, this court is of the view that the purpose of the Easement was to provide access to Webster Lake to engage in those uses reserved to the public, i.e., transient uses. The parties to the grant creating the Easement could not have intended to provide access to a dock, because neither of them had the right to construct a dock, the bed of Webster Lake not being owned by them, but by the Commonwealth. [Note 4] By the time of the grant, by virtue of the derelict fee statute, G. L. c. 183, § 58, the Robinsons no longer owned the fee in the ROW to which a permit to construct a dock could attach, Kubic, 98 Mass. App. Ct. at 301-303, another indication that the parties to the Easement did not contemplate it being used for access to a dock. [Note 5] And, even if ownership of the abutting property was not a requirement for permitting a dock, given the fifty foot width of the easement, other holders of easements, whether express or implied, would not be able to fit docks within the ROW should they all choose to do so. That is yet another indication that the Easement was not intended to provide access to a dock. 





 In the absence of an express grant, the court may still find such a right based on the parties' subsequent behavior, either because probative of the intent of the parties at the time of the grant or because of such longstanding as to supplant the original intent of the parties. As to the former, it has been said: 





 "Where the intent is doubtful, the construction of the parties shown by the subsequent use of the land may be resorted to, if such use tends to explain or characterize the deed, or to show its practical construction by the parties, providing the acts relied upon are not so remote in time or so disconnected with the deed 'as to forbid the inference that they had relation to it as parts of the same transaction or were made in explanation or characterization of it.' [citations omitted]." 





Boudreau v. Coleman, 29 Mass. App. Ct. 621 , 632 (1990), quoting Bacon v. Onset Bay Grove Ass'n, 241 Mass. 417 , 423 (1922). And, as to the latter, the Supreme Judicial Court has said: 





 It is well settled that when an easement is created by deed, but its precise limits and location are not defined, the location and use of the easement by the owner of the dominant estate for many years, acquiesced in by the owner of the servient estate, will be deemed to be that which was intended to be conveyed by the deed. 





Labounty v. Vickers, 352 Mass. 337 , 345 (1967), quoting Kesseler v. Bowditch, 223 Mass. 265 , 268 (1916). 





 Here, however, there is no evidence in the record of any use of the Easement by Audette's predecessors in title at or about the time of its creation in 1966, let alone use to access a substantial dock, and Audette's use, rather than being one of longstanding acquiesced in by the owner of the servient estate, was immediately challenged by Vince in earlier litigation and then in this litigation. Kubic, 98 Mass. App. Ct. at 294. The limited evidence of prior use of the ROW in the record is not helpful. To the extent that evidence relates to use by Vince's family, their easement right was based on different language ("Together with a right of way over existing ways as shown on said Plan") and they, in any event, were determined by the Appeals Court to own the fee in the ROW to its centerline. Kubic, 98 Mass. App. Ct. at 302. To the extent the evidence of use relates to use by the then-owners of Lot 25, those easement rights also derive from different language ("Together with water right over that parcel of land shown as right of way on said plan") and their use, in any event, was too remote in time from the creation of their easement in 1953 to be probative. Accordingly, an examination of subsequent use of the ROW does not assist in determining whether the Easement includes the right to access a dock located in the bed of Webster Lake. 





 As Audette points out, though, "an easement granted in general terms ... is available for all reasonable uses to which the dominant estate may thereafter be devoted." Marden v. Mallard Decoy Club, Inc., 361 Mass. 105 , 107 (1972). "Every right necessary to its enjoyment is included by implication." Sullivan v. Donohoe, 287 Mass. 265 , 267 (1934). That rule is not, however, absolute. As noted in the Restatement (Third) of Property: Servitudes § 4.10 comment c. (2000), while the "holder of an easement is authorized to make any use of the servient estate that is reasonably necessary to the convenient enjoyment of the easement," "unless expressly authorized, the servitude holder is not entitled to cause unreasonable damage to the servient estate or interfere unreasonably with its enjoyment (see Comment g)." Moreover, "[t]he general principle that, where the parties have not agreed otherwise, the servitude should be interpreted to reach a fair balance of their interests leads to the rule that the easement holder may not use it in such a way as to interfere unreasonably with enjoyment of the servient estate." Id. at comment h. 





 Unreasonable interference with the enjoyment of the servient estate takes various forms. "Overloading" an easement is the term now recognized for the proposition, set forth in Murphy v. Mart Realty of Brockton, Inc., 348 Mass. 675 , 678-679 (1965) (citations omitted), that "[a] right of way appurtenant to the land conveyed cannot be used by the owner of the dominant tenement to pass to or from other land adjacent to or beyond that to which the easement is appurtenant." "Overburdening" has been described as "use of an easement for a purpose different from that intended at the creation of the easement," Southwick v. Planning Bd., 65 Mass. App. Ct. 315 , 319 n. 12 (2005), and as "changing the 'manner, frequency, [or] intensity of the use.'" Taylor v. Martha's Vineyard Land Bank Commission, 475 Mass. 682 , 687 (2016), citing Restatement (Third) Of Property: Servitudes, supra at § 4.10 comment b. [Note 6] Here, both the use of the easement for a purpose different from that intended, access to a dock on the pond bed Of Webster Lake, and the manner, frequency and intensity of use are at issue. 





 This court has already determined, as set forth above, that the Easement was not intended to provide access to a dock, so Audette's use of the Easement to do so exceeds the scope of the grant and constitutes an overburdening. In addition, as the Appendix to the Kubic decision shows, Audette's dock fills nearly the entire space between the boundary lines of the ROW extended into Webster Lake. It is eighty-four feet long and, at its widest point, thirty-five feet wide. And, as the photographs in the record show, T.E. 33 a-f, it is a substantial structure, and larger than any other docks in the vicinity. Audette has tied his own boat to the dock every summer since 2013 and has allowed another individual to also moor his boat there every summer since 2015. Leaving aside whether access to any dock at all was contemplated, nothing in the language of the easement or the history of its use suggests that this intensity of use was contemplated at the time of its creation. 





 In addition to the placement and use of Audette's dock, the Appeals Court also referenced testimony to the effect that Audette "engaged in various acts of intimidation to discourage others from using the area." Kubic, 98 Mass. App. Ct. at 304-305. Apparently based on that language, the Plaintiffs argue that Audette's conduct, largely verbal, "comprises a nuisance and an overburdening of his access rights in the ROW." Plaintiffs' Brief at 20. This court does not read Kubic as importing to easement law concepts rooted in tort or criminal law and has found no authority for the proposition that verbal acts, whether by speech or gesture, can constitute an overburdening of an easement. [Note 7] To the extent that Audette (or the Plaintiffs) engaged in conduct that was intimidating or assaultive, there are other remedies available, to which at least one it appears that the parties have already availed themselves. See Kubic, 98 Mass. App. Ct. at 294 n. 11; G. L. c. 258E, § 1 et seq. 





CONCLUSION 





 For the foregoing reasons, a judgment after remand will issue modifying the prior judgment consistent with the rescript from the Appeals Court and, in addition, ordering that Audette and his successors are permanently enjoined from using the ROW to access Webster Lake for purposes other than those available to the general public and, more particularly, will permanently enjoin him and his successors from using the ROW to access any permanent structure located within the lot lines of the ROW as extended into Webster Lake. This matter is set down for hearing at 9:00 a.m. on August 12, 2021 by videoconference regarding the terms of the judgment after remand to be issued by the court. 





SO ORDERED 





FOOTNOTES
[Note 1] This designation of the parties carries forward that used by the Appeals Court in Kubic. 

[Note 2] There is no explanation in the record as to why the restrictions attached to these lots and not to lots 14 through 20. 

[Note 3] The Appeals Court's conclusion in this regard is in keeping with a number of decisions that have considered whether easements providing access to the water include the right to erect a permanent structure or otherwise occupy the servient estate. See Sheftel v. Lebel, 44 Mass. App. Ct. 175 , 183 (1998) (express easement "for foot travel only ... to and from Prince Cove" did not include the right to construct an elevated walkway and pier to mean low water); Johnson v. Bohenko, 24 LCR 596 , 606 (2016) (Piper, J.) (easement allowing owners of lots in subdivision to use a beach "is in jeopardy when physical objects, including watercraft, are left for any length of time along the beach area burdened by the easement"); Town of Nantucket v. Lerner, 17 LCR 220 , 224 (2009) (Trombly, J.) (easement "for the purposes of bathing and boating" was "not sufficient to construe an intent to convey the right to build structures related to ... boating on the servient estate"); Sullivan v. Dart, 17 LCR 543 , 553 (2009) (Sands, J.) (easement for "boating, bathing and other recreational facilities" did not include the right to store a dinghy or kayak on the servient estate). 

[Note 4] G. L. c. 91, § 19, enacted in 1888, provides that "[e]xcept as authorized by the general court and as provided in this chapter, no structure shall be built or extended, or piles driven or land filled, or other obstruction or encroachment made, in, over or upon the waters of any great pond below the natural high water mark; nor shall any erection or excavation be made at any outlet thereof whereby the water may be raised or lowered." 

[Note 5] As the Appeals Court noted, Audette received the G. L. c. 91 License to build his dock based on a misrepresentation as to his ownership of the ROW. In the absence of such an ownership interest in the property abutting the shoreline, it is an open question, not resolved on this record, whether that license would have been granted. 

[Note 6] In full, the Southwick court stated that "[s]ome commentators have used 'overburden' to describe only use of an easement for a purpose different from that intended in the creation of an easement, 'overload' to describe the situation ... where an appurtenant easement is used to serve land other than the land to which it is appurtenant, and 'nuisance' to refer to overly frequent or intensive use. See Lombardi, Bailin, Hovey, & Pill, Massachusetts Easements and Land Use Restrictions III-12 (Professional Education Systems Institute 2003)." The court, however, declined to adopt this terminology. Southwick, 65 Mass. App. Ct. at 319 n. 12 ("We express no view on such distinctions in terminology as a general matter"). More recently, the usefulness of "nuisance overburdening" as a concept has been questioned. This court (Piper, J.) declined to embrace it in Anarpet Realty Corp. v. Stutz Motor Car Co., 22 LCR 265 (2014), 2014 Mass. LCR LEXIS 101 at *53-*54 n. 11, aff'd in part and rev'd in part on other grounds, 88 Mass. App. Ct. 1110 (2015), 2015 Mass. App. Unpub. LEXIS 999 (Rule 23.0 Decision (formerly Rule 1:28)) ("I use the general term 'overburden' (rather than the term 'nuisance') to describe Anarpet's complaints"). And, in FOD, LLC v. White, 99 Mass. App. Ct. 407 , 415 (2021), the Appeals Court stated that "it is not clear that a 'nuisance' overburdening argument exists independently from the issue we addressed above--whether a proposed use is within the scope of the reasonably foreseeable development of the site at the time that the easement was granted." The concept of "nuisance overburdening" has also not been employed by the Restatement (Third) of Property: Servitudes. It is not adopted by this court here. 

[Note 7] In J.W. Bruce and J.E. Ely, Jr., The Law Of Easements And Licenses In Land § 8:13 (Autumn 2020 ed.), examples of overburdening include shifts in vehicular traffic, use by significantly different vehicles, parking, storing boats, sunbathing, spraying toxic herbicides, planting trees, erecting permanent structures on the servient estate, including a locked gates and fences. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.